CANADY, C.J.
 

 In this case, we consider the application in resentencing proceedings of the constitutional right to a jury determination of facts that are essential to the sentence imposed. We have for review
 
 Fleming v. State,
 
 — So.3d-, 2006 WL 1041164, 31 Fla. L. Weekly D1112 (Fla. 1st DCA 2006), in which the First District Court of Appeal certified conflict with
 
 Galindez v. State,
 
 910 So.2d 284 (Fla. 3d DCA 2005). We have jurisdiction.
 
 See
 
 art. V, § 3(b)(4), Fla. Const. Following our disposition of
 
 Galindez v. State,
 
 955 So.2d 517 (Fla.2007), approving the Third District Court of Appeal’s decision on other grounds, we granted the State’s petition to review this case and resolve the ongoing conflict in the district courts regarding the applicability of
 
 Apprendi v. New Jersey,
 
 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and
 
 Blakely v. Washington,
 
 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), to resentencing proceedings that became final after
 
 Apprendi
 
 and
 
 Blakely
 
 issued, where the conviction and the original sentence were final before they issued. Because resentencing is a de novo proceeding in which the decisional law effective at the time of the resentencing applies, we approve the decision in
 
 Fleming
 
 holding that
 
 Apprendi
 
 and
 
 Blakely
 
 apply to such resentencings conducted after
 
 Ap-prendi
 
 and
 
 Blakely
 
 issued.
 

 I. BACKGROUND
 

 A jury found Fleming guilty as charged of aggravated battery with great bodily harm, permanent disability, or permanent disfigurement (Count I); shooting within a dwelling (Count II); and false imprisonment (Count III). On June 30, 1997, the trial court sentenced Fleming to an upward departure sentence of consecutive ten-year sentences on the first two counts and a consecutive five-year term for the third. The trial court found four departure bases for the sentence: (1) the crime was committed in a heinous, atrocious, or cruel manner; (2) the victim suffered permanent physical injury; (3) the offense was committed to avoid arrest; and (4) the primary offense was scored at level seven or higher, and a prior conviction scored at level eight or higher. The conviction and sentence became final when affirmed by the district court in 1999.
 
 Fleming v. State,
 
 740 So.2d 531 (Fla. 1st DCA 1999).
 
 Apprendi
 
 was decided the following year.
 

 Subsequently, the district court reversed the denial of Fleming’s postconviction motion, in which Fleming alleged his sentence was illegal under
 
 Heggs v. State,
 
 759 So.2d 620, 627 (Fla.2000), and remanded for re-sentencing.
 
 See Fleming v. State,
 
 808 So.2d 287 (Fla. 1st DCA 2002).
 
 [1]
 
 At Fleming’s 2003 resentencing, the circuit court scored forty points on the scoresheet for severe victim injury and again departed upward from the guidelines range of fifty-five and a half months to ninety-two and a half months upon finding the same four departure reasons. The court sentenced Fleming to twenty years’ imprisonment: consecutive sentences of ten years for aggravated battery and five years each for shooting in a dwelling and false imprisonment.
 

 
 *401
 
 A year after
 
 Blakely
 
 was decided,
 
 see
 
 542 U.S. 296, 124 S.Ct. 2531, the First District granted Fleming a belated appeal from the 2003 resentencing order.
 
 Fleming v. State,
 
 895 So.2d 538, 539 (Fla. 1st DCA 2005) (“Petitioner has shown that he was not advised of his right to appeal at the time of resentencing, and we therefore grant the petition”). During the pen-dency of the belated appeal, Fleming filed a motion under Florida Rule of Criminal Procedure 3.800(b)(2), claiming that his new sentence violated
 
 Apprendi
 
 and
 
 Blakely.
 
 The State did not respond to the motion, and the circuit court did not rule on it. Accordingly, on appeal Fleming argued that the forty victim injury points and three of the departure reasons were invalid under
 
 Apprendi
 
 and
 
 Blakely
 
 because a judge, not a jury, made these findings. Fleming also contended that the fourth departure reason was invalid on its face because he had no convictions at level eight or higher, an issue the State conceded. Applying its prior decision in
 
 Isaac v. State,
 
 911 So.2d 813 (Fla. 1st DCA 2005),
 
 review granted,
 
 4 So.3d 677 (Fla. 2009), which held that
 
 Apprendi
 
 applies to resentencings held after
 
 Apprendi
 
 issued, the First District addressed Fleming’s claims. The district court found no error regarding the trial court’s scoring of forty points for victim injury after determining they were supported by the jury’s verdict.
 
 Fleming,
 
 — So.3d at -, 31 Fla. L. Weekly at 1112.
 
 [2]
 
 The First District, however, determined — and the State conceded — that under
 
 Isaac
 
 the trial court’s finding of the other three upward departure grounds did violate
 
 Apprendi
 
 and
 
 Blakely.
 
 Accordingly, the court reversed and remanded for resentencing.
 
 Id.
 

 The First District subsequently granted the State’s motion to certify conflict and stay the mandate in the case. By order, the district court certified conflict with the Third District’s
 
 Galindez
 
 decision and two decisions from the Fourth District to the extent they “suggest that
 
 Blakely
 
 and
 
 Ap-prendi
 
 do not apply to resentencing proceedings.” The State then petitioned this Court for review. We postponed our decision on jurisdiction and stayed the case pending our decision in
 
 Galindez,
 
 955 So.2d 517, which presented the conflict issue but which we ultimately decided on harmless error grounds. Finally, we granted the State’s request to review this case and resolve the extant conflict.
 

 II. ANALYSIS
 

 The question we address here is whether — in cases in which the convictions were final before
 
 Apprendi issued
 
 — Apprendi and
 
 Blakely
 
 apply to resentencing proceedings held after
 
 Apprendi
 
 issued where the resentencing was not final when
 
 Blakely
 
 issued. As stated above, the First District has held that
 
 Apprendi
 
 and
 
 Blakely
 
 do apply in such resentencing proceedings. As explained below, however, the other four district courts of appeal disagree, reasoning that this would constitute an improper retroactive application of these United States Supreme Court decisions.
 
 [3]
 

 
 *402
 
 To provide context for our analysis, we begin by (A) outlining the holdings of
 
 Ap-prendi
 
 and
 
 Blakely
 
 and the determinations regarding their retroactive application to final cases. Next, we (B) explain the conflict in the district courts regarding their applicability in resentencings. Finally, we (C) resolve the conflict and hold that because resentencing proceedings are de novo in nature,
 
 Apprendi
 
 and
 
 Blakely
 
 necessarily apply to resentencings held after
 
 Apprendi
 
 and
 
 Blakely
 
 issued, even where the conviction was final before they issued.
 

 A.
 
 Apprendi
 
 and
 
 Blakely
 
 and Retroactivity to Final Cases
 

 In its decisions in
 
 Apprendi
 
 and
 
 Blakely,
 
 the United States Supreme Court altered the rules of procedure regarding fact-finding in criminal sentencing based on the Court’s interpretation of the requirements of the Sixth Amendment right to trial by jury and the Due Process Clause of the Fourteenth Amendment.
 

 As part of a plea agreement, Apprendi pleaded guilty to, among others, a second-degree firearms offense for which the statutory maximum sentence was ten years.
 
 Apprendi
 
 530 U.S. at 468, 120 S.Ct. 2348. Under the state’s “hate crime” statute, however, the trial court could impose a sentence of up to twenty years for the crime upon making an additional finding by a preponderance of the evidence.
 
 Id.
 
 at 468-69, 120 S.Ct. 2348. After an evi-dentiary hearing, the trial court found that Apprendi’s crime was motivated by racial bias and imposed an enhanced sentence of twelve years.
 
 Id.
 
 at 469-71, 120 S.Ct. 2348. The question before the Supreme Court was “whether Apprendi had a constitutional right to have a jury find [the sentencing factor of] bias on the basis of proof beyond a reasonable doubt.”
 
 Id.
 
 at 475-76, 120 S.Ct. 2348. After reviewing the history of criminal sentencing, the Supreme Court stated that “nothing in this history suggests that it is impermissible for judges to exercise discretion — taking into consideration various factors relating both to offense and offender — in imposing a judgment
 
 within the range
 
 prescribed by statute” and that “judges in this country have long exercised discretion of this nature in imposing sentence
 
 within statutory limits
 
 in the individual case.”
 
 Id.
 
 at 481, 120 S.Ct. 2348. In contrast, the New Jersey sentencing scheme provided the trial court with the power to find additional facts and impose a sentence beyond the prescribed penalty for that crime. Accordingly, the Supreme Court held that “[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.”
 
 Id.
 
 at 490,120 S.Ct. 2348.
 

 In light of the holding in
 
 Apprendi,
 
 Florida courts determined that trial courts were still empowered to find additional facts in imposing lengthier sentences, but they were limited by the maximum punishment provided by the statute for the specific crime.
 
 See Hall v. State,
 
 823 So.2d 757, 764 (Fla.2002) (“Because the sentence
 
 *403
 
 for each of Hall’s offenses did not exceed the statutory maximum, we conclude that
 
 Apprendi
 
 is inapplicable.”);
 
 Isaac v. State,
 
 826 So.2d 396 (Fla. 1st DCA 2002) (“The rule of
 
 [Apprendi
 
 ] ... does not apply when the sentence does not exceed the statutory maximum permitted by section 775.082, Florida Statutes.”).
 

 Four years after
 
 Apprendi,
 
 the Supreme Court in
 
 Blakely
 
 addressed the application of the principles of
 
 Apprendi
 
 to guidelines sentencing schemes. In
 
 Blakely,
 
 the defendant entered a guilty plea, “admitting the elements of second-degree kidnaping and the domestic-violence and firearm allegations, but no other relevant facts.”
 
 Blakely,
 
 542 U.S. at 299, 124 S.Ct. 2531. Under a Washington statute, the kidnapping charge was a second-degree felony punishable by a term not exceeding ten years, but another statute provided a “standard range” sentence for second-degree kidnapping with a firearm of forty-nine to fifty-three months.
 
 Id. A
 
 judge, however, could impose a departure sentence exceeding the standard range up to the statutory maximum for the crime based on one or more aggravating factors. Upon finding that Blakely committed the crime with “deliberate cruelty,” the trial court imposed a sentence of ninety months, which exceeded the standard range by more than three years.
 
 Id.
 
 at 300, 124 S.Ct. 2531. The Supreme Court rejected the state’s argument that Blakely’s sentence fell within the statutory maximum of ten years, determining that the sentence “could not have [been] imposed ... solely on the basis of the facts admitted in the guilty plea.”
 
 Id.
 
 at 304, 124 S.Ct. 2531. Accordingly, the Supreme Court held as follows:
 

 Our precedents make clear, however, that the “statutory maximum” for
 
 Ap-prendi
 
 purposes is the maximum sentence a judge may impose
 
 solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.
 
 In other words, the relevant “statutory maximum” is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose
 
 without
 
 any additional findings. When a judge inflicts punishment that the jury’s verdict alone does not allow, the jury has not found all the facts “which the law makes essential to the punishment,” and the judge exceeds his proper authority.
 

 Id.
 
 at 303-04, 124 S.Ct. 2531 (citations omitted).
 

 When the Supreme Court announces “a new rule for the conduct of criminal prosecutions,” the rule must be applied to “all cases, state or federal, pending on direct review or not yet final.”
 
 Griffith v. Kentucky,
 
 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). Similarly, when this Court “announce[es] a new rule of law, or merely appl[ies] an established rule of law to a new or different factual situation,” the decision applies “in every [Florida] case pending on direct review or not yet final.”
 
 Smith v. State,
 
 598 So.2d 1063, 1066 (Fla.1992);
 
 see Wuornos v. State,
 
 644 So.2d 1000, 1007 n. 4 (Fla.1994) (“We read
 
 Smith
 
 to mean that new points of law established by this Court shall be deemed retrospective with respect to all non-final cases unless this Court says otherwise.”).
 

 To determine whether a new rule applies retroactively to final cases in postcon-viction proceedings, however, courts in Florida conduct a retroactivity analysis under
 
 Witt v. State,
 
 387 So.2d 922 (Fla.1980). In
 
 Hughes v. State,
 
 901 So.2d 837, 838 (Fla.2005), we analyzed
 
 Apprendi
 
 under the
 
 Witt
 
 factors and concluded that the new
 
 Apprendi
 
 rule of procedure did not apply retroactively to cases that were final when it issued. At the same time, we
 
 *404
 
 determined in
 
 Johnson v. State,
 
 904 So.2d 400, 405 (Fla.2005), that the Supreme Court’s decision in
 
 Ring v. Arizona,
 
 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), which applied the reasoning of
 
 Ap-prendi
 
 to death penalty cases, also did not apply retroactively to death-sentenced defendants “whose convictions already were final when that decision was rendered.”
 
 [4]
 
 We have not directly addressed
 
 Blakely’s
 
 retroactive application to final cases.
 
 See Galindez,
 
 955 So.2d at 524 (Cantero, J., specially concurring) (“We already have held that
 
 Apprendi
 
 does not apply retroactively. Presumably, neither does its offspring,
 
 Blakely.”
 
 (citation omitted)). Florida’s district courts of appeal, however, have concluded that
 
 Blakely,
 
 like
 
 Appren-di,
 
 does not apply retroactively to cases that were final before it issued.
 
 See, e.g., Thompson v. State,
 
 949 So.2d 1169, 1173 (Fla. 1st DCA 2007) (“Florida courts, including this one, have generally agreed that
 
 Blakely
 
 has no application to cases that were already final when
 
 Blakely
 
 was handed down.”),
 
 quashed on other grounds,
 
 990 So.2d 482, 482 (Fla.2008);
 
 Thomas v. State,
 
 914 So.2d 27, 28 (Fla. 4th DCA 2005) (concluding on the basis of
 
 Hughes
 
 that
 
 Blakely
 
 does not apply retroactively).
 

 B. Conflict in the District Courts
 

 Despite their agreement regarding the nonretroactivity of
 
 Apprendi
 
 and
 
 Blakely,
 
 the district courts differ regarding the applicability of
 
 Apprendi
 
 and
 
 Blakely
 
 in certain resentencing proceedings. ' As explained below, the First District alone has held that
 
 Blakely
 
 and
 
 Apprendi
 
 apply to resentencings held after those decisions
 

 issued where the conviction was final before they issued.
 

 In this case, Fleming’s conviction was final in 1997, as was his sentence. Fleming’s sentence, however, did not remain so; he was successful in obtaining postconviction relief from his sentence. He was resentenced in 2003, and that new sentence was not final when
 
 Apprendi
 
 and
 
 Blakely
 
 were decided. The First District held that
 
 Apprendi
 
 and
 
 Blakely
 
 applied to Fleming’s resentencing under its prior decision in
 
 Isaac,
 
 911 So.2d at 815, and reversed and remanded for resentencing.
 
 Fleming,
 
 — So.3d at -, 31 Fla. L. Weekly at 1112.
 
 [5]
 
 In
 
 Isaac,
 
 the majority specifically acknowledged that
 
 “Apprendi
 
 is not retroactive” but did not find this relevant.
 
 Isaac,
 
 911 So.2d at 814. Without elaboration, the First District held that “the trial court was bound” by
 
 Apprendi
 
 because
 
 Apprendi
 
 was decided before Isaac’s resentencing.
 
 Id.
 
 The First District applied this same reasoning in Fleming’s case and others.
 
 See McGriff v. State,
 
 - So.3d -, -, 32 Fla. L. Weekly D520, D521 (Fla. 1st DCA 2007) (“Because
 
 Apprendi
 
 and
 
 Blakely
 
 were decided prior to Appellant’s resentencing becoming final,
 
 Apprendi
 
 and
 
 Blakely
 
 apply to Appellant’s case.”),
 
 review granted,
 
 4 So.3d 677 (Fla.2009).
 

 The First District in
 
 Isaac
 
 certified conflict with the Third District’s decision in
 
 Galindez,
 
 in which — as in Fleming— the defendant’s conviction was final before
 
 Apprendi
 
 issued, but he was resentenced afterwards, and
 
 Blakely
 
 issued during the pendency of his resentencing appeal.
 
 *405
 

 Galindez,
 
 910 So.2d at 284-85. The Third District held that
 
 Apprendi
 
 and
 
 Blakely
 
 did not apply to Galindez’s resentencing because this constituted their retroactive application to a conviction that was final before those decisions issued.
 
 Galindez,
 
 910 So.2d at 285. In so holding, the Third District adopted the reasoning of the dissent in
 
 Isaac:
 
 “[A]s clearly and correctly stated by Judge Kahn in
 
 Isaac v. State, Apprendi
 
 and
 
 Blakely,
 
 which have no retroactive application, cannot be applied to alter the effect of a jury verdict and conviction ... rendered prior to those decisions, notwithstanding that further re-sentencing proceedings are pending after-wards.”
 
 Galindez,
 
 910 So.2d at 285 (citations omitted). Citing our decision in
 
 Hughes,
 
 Judge Kahn in
 
 Isaac
 
 had concluded that the finality of a conviction
 
 pre-Apprendi
 
 is determinative of
 
 Appren-di’s
 
 applicability in a case and that resen-tencing was of no consequence to the issue:
 

 [E]ven though appellant was resen-tenced in June 2001,
 
 Apprendi
 
 does not apply because his conviction became final in 1998.
 
 Apprendi,
 
 of course, involves a right under the Sixth and Fourteenth Amendments of the United States Constitution for state criminal defendants to have certain facts determined by a jury beyond a reasonable doubt, rather than by a judge. As the
 
 Hughes
 
 retroactivity analysis instructs, the rule of
 
 Apprendi
 
 is not “of sufficient magnitude as to require retroactive application.” 901 So.2d at 840. Here, because Isaac’s jury was obviously discharged after the original criminal trial on January 15, 1997, the factual matters underlying the guidelines departure sentences may not be submitted to a jury. Accordingly,
 
 Hughes’
 
 focus on finality of the conviction is very important, and I would follow that rule until it is altered. Because these convictions were final long before announcement of the
 
 Ap-prendi
 
 rule, I would let the twenty-year sentences stand.
 

 Isaac,
 
 911 So.2d at 816 (Kahn, J., dissenting).
 
 [6]
 
 The Second, Fourth, and Fifth Districts agreed with the Third District and Judge Kahn’s dissent that
 
 Apprendi
 
 and
 
 Blakely
 
 do not apply to convictions final before the Supreme Court decisions issued and thus do not apply to any subsequent resentencings in such cases.
 
 See Cutts v. State,
 
 940 So.2d 1246, 1247 (Fla. 2d DCA 2006),
 
 quashed on other grounds,
 
 976 So.2d 579 (Fla.2008);
 
 Lester v. State,
 
 923 So.2d 596, 597 (Fla. 5th DCA 2006),
 
 quashed on other grounds,
 
 976 So.2d 577, 577 (Fla.2008);
 
 Hamilton v. State,
 
 914 So.2d 993, 994 (Fla. 4th DCA 2005),
 
 quashed on other grounds,
 
 976 So.2d 575, 576 (Fla.2008).
 

 C. Resolving the Conflict
 

 In holding that
 
 Apprendi
 
 and
 
 Blakely
 
 apply to resentencings regardless of the finality of the defendant’s conviction before they issued, the First District implicitly followed longstanding precedent of this Court regarding the nature of resentenc-ing. As we explain below, two principles support our holding that these two United States Supreme Court cases apply to all resentencing proceedings held after they issued: (1) resentencing proceedings are de novo; and (2) the decisional law in effect before an appeal is final applies to the proceeding. Further, our holding in no way contravenes our prior decision in
 
 Hughes,
 
 holding that
 
 Apprendi
 
 does not apply retroactively as a basis for relief in postconviction proceedings.
 

 
 *406
 
 First, this Court has long held that where a sentence has been reversed or vacated, the resentencings in all criminal proceedings, including death penalty cases, are de novo in nature.
 
 See Morton v. State,
 
 789 So.2d 324, 334 (Fla.2001). (reasoning that in a new penalty phase “resen-tencing should proceed de novo on all issues bearing on the proper sentence” (quoting
 
 Teffeteller v. State,
 
 495 So.2d 744, 745 (Fla.1986)));
 
 see also Preston v. State,
 
 607 So.2d 404, 408 (Fla.1992) (referring to new penalty phase proceeding as a “clean slate” and stating that “a resentencing is a completely new proceeding”). This means that when a defendant is resentenced, “the full panoply of due process considerations attach.”
 
 State v. Scott,
 
 439 So.2d 219, 220 (Fla.1983) (“[0]nce the court has determined that the sentence was indeed illegal and the prisoner is entitled to a modification of the original sentence or the imposition of a new sentence, the full panoply of due process considerations attach.”);
 
 see Trotter v. State,
 
 825 So.2d 362, 368 (Fla.2002) (“We agree with the district courts of appeal that a resentencing pursuant to
 
 Heggs
 
 is a de novo sentencing proceeding that must comport with constitutional requirements.”).
 

 Because the resentencing is de novo, we have held that both parties may present new evidence bearing on the sentence. For example, in
 
 State v. Collins,
 
 985 So.2d 985, 994 (Fla.2008), we held “that when a habitual offender sentence is reversed because of insufficient evidence, on remand for resentencing the State may again attempt to prove that the defendant meets the criteria for such sentencing.”
 
 See Mann v. State,
 
 453 So.2d 784, 786 (Fla.1984) (rejecting appellant’s argument that the state was not permitted to present new evidence at his resentencing and stating that “[o]ur remand directed a new sentencing proceeding, not just a reweighing” at which “both sides may, if they choose, present additional evidence”);
 
 see also Rich v. State,
 
 814 So.2d 1207, 1208 (Fla. 4th DCA 2002) (holding that at resentenc-ing, the State must present evidence on an enhanced sentencing factor despite having done so at the prior sentencing hearing).
 

 The trial court has discretion at resentencing — within certain constitutional confines — to impose sentence using available factors not previously considered.
 
 See Scott,
 
 439 So.2d at 221 (“Nor has the plight of the trial court seeking to impose a new sentence been an easy one, fraught as it is with constitutional challenges and considerations of post-sentencing infractions which would allow a material increase in the sentence, pursuant to
 
 North Carolina v. Pearce,
 
 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).”). In
 
 Trotter,
 
 the defendant’s original 83.2-month guidelines sentence was illegal under our decision in
 
 Heggs.
 
 We held that, “[i]n an attempt to reach what the trial court originally considered to be an appropriate sentence,” the trial judge at resentencing had discretion to apply a drug trafficking multiplier not employed at the prior sentencing to impose a sentence of seventy-two months.
 
 Trotter,
 
 825 So.2d at 367-68. Similarly, in
 
 Roberts v. State,
 
 547 So.2d 129, 130 (Fla.1989), the original trial judge imposed the maximum guidelines sentence of concurrent terms of twenty-seven years using an improperly calculated scoresheet. At resentencing, the new trial court imposed the same sentence by departing upward from the guidelines maximum of twenty-two years under the new score-sheet. We approved, holding “that it is proper for the judge to reconsider whether a departure from the guidelines is appropriate when the corrected guidelines score-sheet is before him on remand.”
 
 Roberts,
 
 547 So.2d at 131;
 
 see Roberts v. State,
 
 644 So.2d 81, 81-82 (Fla.1994) (holding that at resentencing on violation of probation, trial
 
 *407
 
 court may revise guidelines scoresheet to reflect prior convictions “mistakenly omitted from the original through no fault of the defendant”).
 
 [7]
 

 We have already referred to the attendant principle underpinning our decision here — that the decisional law in effect before an appeal is final applies in that proceeding. When the United States Supreme Court announces a new rule applicable to criminal proceedings, the rule applies to all federal and state cases pending on direct appeal or not yet final,
 
 Griffith,
 
 479 U.S. at 328, 107 S.Ct. 708, and any decision from this Court applies to all of this state’s cases pending review or nonfinal cases,
 
 Smith,
 
 598 So.2d at 1066. Thus, because resentencing is de novo, the decisional law in effect at the time of the resentencing or before any direct appeal from the proceeding is final applies.
 
 See Wheeler v. State,
 
 344 So.2d 244, 245 (Fla.1977) (“The decisional law in effect at the time an appeal is decided governs the issues raised on appeal, even where there has been a change of law since the time of trial.”);
 
 cf. Harris v. State,
 
 645 So.2d 386, 388 (Fla.1994) (stating where State cross-appealed sentence because trial court determined as matter of law that no habitual offender sentence could be imposed, such a sentence could be imposed at resentencing because a decision issued during pendency of the appeal clarified the issue).
 

 Moreover, this Court has applied these two principles in a context on all fours with the question presented here. In
 
 Parker v. State,
 
 476 So.2d 134, 140 (Fla.1985), we affirmed a death-sentenced defendant’s conviction and sentence. In 1998, however, we affirmed the trial court’s grant of Parker’s postconviction request for a new penalty phase.
 
 State v. Parker,
 
 721 So.2d 1147, 1152 (Fla.1998). At the conclusion of the new penalty phase, the trial court followed the jury recommendation and sentenced Parker to death.
 
 Parker v. State,
 
 873 So.2d 270, 276 (Fla.2004). Before the new penalty phase was held, however, Parker filed a motion in the circuit court to suppress one of his statements made to police in 1982, relying on the United States Supreme Court’s later decision in
 
 Michigan v. Jackson,
 
 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986).
 
 Parker,
 
 873 So.2d at 277, 279.
 
 [8]
 
 The trial court denied the motion, and Parker raised this issue on appeal. The State argued that this Court need not address the merits of Parker’s suppression issue for two reasons: (1)
 
 Jackson
 
 did not apply since it was decided after his original trial was held and his conviction was final; and (2) this Court had held in
 
 Henderson v. Dugger,
 
 522 So.2d 835, 837 (Fla.1988), that
 
 Jackson
 
 did not apply retroactively.
 
 Parker,
 
 873 So.2d at 280 n. 6. We rejected both arguments: “[A]s previously explained, because the new penalty phase was a new proceeding, neither the trial court nor this Court is precluded from applying case law rendered after the original sentencing.”
 
 Parker,
 
 
 *408
 
 873 So.2d at 280 n. 6;
 
 see id.
 
 at 278 (“Further, it is the law at the time of Parker’s new penalty phase that determines the admissibility of the evidence during that proceeding”). Accordingly, we affirmed the trial court’s denial of the motion on the merits, not on the basis of any of the State’s claims of procedural bar.
 
 See id.
 
 at 281.
 

 Just as applying
 
 Jackson
 
 at Parker’s new penalty phase did not constitute a retroactive application of
 
 Jackson,
 
 neither does applying
 
 Apprendi
 
 and
 
 Blakely
 
 to the resentencing of a defendant such as Fleming constitute their retroactive application. In
 
 Hughes,
 
 we concluded that
 
 “Apprendi
 
 does not affect the determination of guilt or innocence.” 901 So.2d at 841. Instead,
 
 “Apprendi
 
 affects only the
 
 procedure
 
 for enhancing the
 
 sentence.” Id.
 
 at 843 (some emphasis added). Thus, we made it clear that
 
 Apprendi
 
 did not affect convictions-only sentences. After applying the factors of
 
 Witt,
 
 we then determined that
 
 Apprendi
 
 did not require that we undo sentences final before it issued and hold new sentencing proceedings in order to apply
 
 Ap-prendi. Hughes,
 
 901 So.2d at 845-46.
 

 In cases such as Fleming’s, the basis for granting postconviction relief to vacate original final sentences was not the violation of
 
 Apprendi
 
 and
 
 Blakely.
 
 That would be the retroactive application of those cases to provide postconviction relief. Rather, in Fleming’s case, for example, the district court vacated his
 
 pre-Apprendi
 
 original final sentence because that sentence was illegal under
 
 Heggs. Fleming,
 
 895 So.2d at 539. As a result, Fleming had to be and was resentenced in a de novo resentencing proceeding.
 
 See Trotter,
 
 825 So.2d at 368 (“We agree with the district courts of appeal that a resentenc-ing pursuant to
 
 Heggs
 
 is a de novo sentencing proceeding that must comport with constitutional requirements.”).
 
 Apprendi
 
 issued before the resentencing was held and was not final when
 
 Blakely
 
 issued. Accordingly, the constitutional procedural rules for sentencing established in
 
 Appren-di
 
 and
 
 Blakely
 
 were current law and applicable to Fleming’s resentencing, just as the United States Supreme Court’s decision in
 
 Jackson
 
 was current law applicable at the time the defendant in
 
 Parker
 
 was resentenced — despite the fact that his conviction was final before
 
 Jackson
 
 issued and remained final when the new penalty phase was held.
 

 As explained above, (1) when a sentence is vacated, the defendant is re-sentenced at a new proceeding subject to the full panoply of due process rights, and (2) the decisional law in -effect at the time of a de novo resentencing or before that resentencing is final applies to those proceedings and the issues raised on appeal. Consonant with these two principles, we hold that
 
 Apprendi
 
 and
 
 Blakely
 
 apply to all de novo resentencings that were not final when
 
 Apprendi
 
 and
 
 Blakely
 
 issued regardless of when the conviction or original sentence was final.
 

 III. CONCLUSION
 

 Under the decisions in
 
 Apprendi
 
 and
 
 Blakely,
 
 except for the fact of a prior conviction, a judge may impose sentence based solely on the facts reflected in a jury verdict or admitted by the defendant. Regardless of whether a defendant’s conviction and sentence were final before
 
 Ap-prendi
 
 and
 
 Blakely
 
 issued, we hold that where a defendant’s resentencing was not final when
 
 Apprendi
 
 and
 
 Blakely
 
 issued, the rules established in these cases apply to that de novo proceeding. Accordingly, we approve the decision of the First District Court of Appeal in this case determining that
 
 Apprendi
 
 and
 
 Blakely
 
 apply to Fleming’s resentencing. Because we dis
 
 *409
 
 allowed briefing on harmless error in this case so that we could resolve the conflict in the district courts, however, we have not conducted such an analysis. Accordingly, we remand this matter to the First District Court of Appeal for application of a harmless error analysis under our decision in
 
 Galmdez.
 

 It is so ordered.
 

 PARIENTE, LEWIS, QUINCE, LABARGA, and PERRY, JJ., concur.
 

 POLSTON, J., recused.
 

 [1]
 

 . In
 
 Heggs,
 
 we held the 1995 amendments to the 1994 sentencing guidelines unconstitutional as a result of a single subject violation. 759 So.2d at 627.
 

 [2]
 

 . The court reasoned as follows:
 

 Although the jury must make a finding of severe victim injury pursuant to
 
 Apprendi,
 
 in this case severe victim injury was found by the jury when it convicted appellant of aggravated battery by causing great bodily harm, permanent disability, or permanent disfigurement.
 
 Cf. Arrowood v. State,
 
 843 So.2d 940, 941 (Fla. 1st DCA 2003) (stating, "[t]he jury’s findings of DUI manslaughter and DUI serious bodily injuries support the imposition of the death and severe victim injury points”). Accordingly, the trial court’s assessment of 40 points for severe victim injury was not error in this case.
 

 Fleming,
 
 — So.3d at-, 31 Fla. L. Weekly at 1112 (footnote omitted).
 

 [3]
 

 . In its initial brief, the State sought review of the conflict issue but also argued that the Court need not address it. The State con
 
 *402
 
 tended that Fleming’s rule 3.800(b) motion could not preserve the
 
 Apprendi/Blakely
 
 issue for review in the district court. The State, however, did not preserve this argument in the district court, and as Fleming points out, the district courts have held that such claims are properly preserved by such a motion and no cases hold to the contrary.
 
 See Arrowood v. State,
 
 843 So.2d 940, 941 (Fla. 1st DCA 2003) (''[The defendant] properly filed a motion pursuant to Florida Rule of Criminal Procedure 3.800(b)(2) to raise his
 
 Apprendi
 
 claim.”). To the extent the State argues that our decision in
 
 Jackson v. State,
 
 983 So.2d 562 (Fla.2008), controls this issue, we note that
 
 Jackson
 
 does not directly address or even mention
 
 Apprendi
 
 error.
 

 [4]
 

 . The United States Supreme Court previously had determined under a different analysis that
 
 Ring
 
 does not apply retroactively under federal law.
 
 See Schriro v. Summerlin,
 
 542 U.S. 348, 358, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004). The Supreme Court has not addressed the question of
 
 Blakely’s
 
 retroactive applicability.
 

 [5]
 

 . As stated previously, the State conceded in Fleming’s appeal that under
 
 Isaac, Apprendi,
 
 and
 
 Blakely,
 
 error occurred in Fleming’s sentence.
 

 [6]
 

 . When Isaac was resentenced in 2001, the trial court again imposed four concurrent twenty-year sentences, but it was an upward departure sentence rather than a guidelines sentence.
 
 Isaac,
 
 911 So.2d at 814-15.
 

 [7]
 

 . Our holding in
 
 Shull v. Dugger,
 
 515 So.2d 748, 750 (1987), “that a trial court may not enunciate new reasons for a departure sentence after the reasons given for the original departure sentence have been reversed by an appellate court,” merely “precludefd] the possibility of a judge providing an after-the-fact justification for a previously imposed departure sentence,”
 
 Jones v. State,
 
 559 So.2d 204, 206 (Fla.1990). This rather singular, prophylactic exception did not, as the State argues, tacitly negate this Court’s numerous and longstanding precedents regarding the de novo nature of resentencing.
 

 [8]
 

 . Jackson held that when police initiate interrogation after a defendant asserts the right to counsel, any waiver of that right for that interrogation is invalid and the resulting statement is inadmissible as substantive evidence against the defendant. 475 U.S. at 636, 106 S.Ct. 1404.