CANADY, J.
In this case, we consider whether the definition of the term “statutory maximum” announced in Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), applies to final criminal sentences imposed before the decision in Blakely issued. In Johnson v. State, 18 So.3d 623, 625 (Fla. 1st DCA 2009), the First District Court of Appeal held that Blakely's new definition applies retroactively to cases on collateral review in which sentences were imposed after the Supreme Court’s decision in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), was issued. The First District’s holding expressly and directly conflicts with the decision in Thomas v. State, 914 So.2d 27, 28 (Fla. 4th DCA 2005). Accordingly, we have jurisdiction. See art. V, § 3(b)(3), Fla. Const. For the reasons explained below, we hold that Blakely does not apply retroactively to final sentences or resentences. Thus, the decision affords no pathway to postconviction relief regarding any sentence that was final before Blakely issued.
I. BACKGROUND
After trial by jury, Sirron Johnson was convicted for the 1995 armed kidnapping, armed sexual battery, and armed robbery of victim C.R. Johnson v. State, 717 So.2d 1057, 1059 (Fla. 1st DCA 1998). “[T]he permitted sentencing range on his guidelines scoresheet was 9.6 to 16 years’ imprisonment,” but the trial court sentenced him to concurrent, upward departure sentences of forty-eight years on each count. Johnson, 18 So.3d at 624. His sentence became final in October 2000, after Ap-prendi issued in June 2000. See Johnson v. State, 761 So.2d 318 (Fla.) (approving district court decision), cert. denied, 531 U.S. 889, 121 S.Ct. 212, 148 L.Ed.2d 149 (2000). Then, in December 2000, Johnson filed a postconviction motion to correct illegal sentence, alleging that his departure sentence exceeded the statutory maximum. The trial court granted the motion and, two years before Blakely issued, resen-tenced Johnson to concurrent terms of forty years on two counts and reimposed the forty-eight year sentence for the armed robbery. See Johnson, 18 So.3d at 624. In June 2007, Johnson filed a motion alleging that the upward departure sentences imposed at his June 2002 resentencing exceeded the statutory maximum as defined by Apprendi and Blakely. The trial court denied the motion, and Johnson appealed.
On review, the First District relied on its prior decisions in Isaac v. State, 911 So.2d 813 (Fla. 1st DCA 2005), review dismissed, 66 So.3d 912 (2011), cert. denied, — U.S. -, 132 S.Ct. 1539, 182 *858 L.Ed.2d 161 (2012), and Monnar v. State, 984 So.2d 619 (Fla. 1st DCA 2008), to hold that Blakely applied to Johnson’s pre-Blakely resentencing. Johnson, 18 So.3d at 624-25. In Isaac, the district court reasoned that Blakely merely “clarified” Apprendi; thus, Blakely applied to Isaac’s de novo, pre-Blakely resentencing. 911 So.2d at 814-15. Three years later, the First District reiterated that the governing rule in the First District was that Blakely applied “to any resentencing that took place after Apprendi came down, even re-sentencings taking place before Blakely was decided.” Monnar, 984 So.2d at 619. Accordingly, in Johnson, the First District reasoned and held as follows:
Here the appellant was resentenced after Apprendi was decided but before Blakely came down. Thus, pursuant to Isaac, the dictates of Apprendi and Blakely apply to appellant’s sentences.
The trial court held that even if Ap-prendi applies, the sentences imposed did not violate Apprendi because they were not above the statutory máximums for the offenses. However, the appellant was sentenced pursuant to the sentencing guidelines, not the Criminal Punishment Code. Thus, as Blakely makes clear, the statutory maximum would be the maximum guidelines sentence appellant could receive without the court imposing an upward departure. See Behl v. State, 898 So.2d 217 (Fla. 2d DCA 2005) (holding that pursuant to Blakely, “under a guidelines sentencing scheme which restricts judicial discretion in imposing sentences, the factors used to calculate the maximum guidelines sentence to which a defendant is exposed must be based either on (1) findings made by the jury, (2) facts admitted by the defendant, or (3) the defendant’s prior convictions.”).
Johnson, 18 So.3d at 625. The district court reversed and remanded the case. Id. We granted review. See State v. Johnson, 84 So.3d 1032 (Fla.2012) (table).
II. ANALYSIS
The Supreme Court’s decisions in Ap-prendi and Blakely have caused considerable confusion in criminal sentencing at both the federal and state levels. To resolve the ongoing conflict in our state’s courts regarding the applicability of Blakely to sentences that were final before it issued, we begin by discussing the holdings in these two federal cases and the subsequent rulings of the Supreme Court and this Court regarding their application. Next, we explain the conflict in our state’s district courts regarding Blakely’s application to sentences that were final before Blakely was decided. Finally, we apply our test for determining retroactivity and hold that the rule announced in Blakely is not retroactive.
A. Apprendi, Blakely, and Related Decisions
In Apprendi and Blakely, the Supreme Court addressed the limitations on the sentencing powers of a trial court. In Apprendi the Court was presented with this question: “[Wjhether the Due Process Clause of the Fourteenth Amendment requires that a factual determination authorizing an increase in the maximum prison sentence for an offense from 10 to 20 years be made by a jury on the basis of proof beyond a reasonable doubt.” Apprendi, 530 U.S. at 469, 120 S.Ct. 2348. In that case, the defendant pleaded guilty pursuant to a plea agreement to three counts, two of which were the second-degree possession of a firearm for an unlawful purpose. Id. at 469-70, 120 S.Ct. 2348. One New Jersey statute provided a five-to-ten year sentencing range for the offense, but another gave the trial court discretion to impose an extended term of years upon *859 finding by a preponderance of the evidence that the offense was a “hate crime.” Id. at 468-69, 120 S.Ct. 2848. The trial court found the offense was a hate crime and imposed an enhanced sentence. Id. at 471, 120 S.Ct. 2348. On review, the Supreme Court noted that “judges in this country have long exercised discretion of this nature in imposing sentence within statutory limits,” id. at 481, 120 S.Ct. 2348 but determined that the trial court exceeded those limits in imposing the enhanced sentence.
In sum, our reexamination of our cases in this area, and of the history upon which they rely, confirms the opinion that we expressed in Jones [v. United States, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999)]. Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.
Id. at 490, 120 S.Ct. 2348 (emphasis added). Accordingly, the Court reversed and remanded for further proceedings. Id. at 497,120 S.Ct. 2348.
Subsequently, we applied our retroactivity analysis from Witt v. State, 387 So.2d 922, 925 (Fla.1980), to the new procedural rule announced in Apprendi and held that the Supreme Court’s decision should not be applied retroactively to cases that were final when the decision issued. Hughes v. State, 901 So.2d 837, 846 (Fla.2005). The United States Supreme Court also has addressed the question of Apprendi’s retro-activity, albeit indirectly. In Ring v. Arizona, 536 U.S. 584, 609, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), the' Court applied the rule in Apprendi to capital cases and held that “[b]ecause Arizona’s enumerated aggravating factors operate as ‘the functional equivalent of an element of a greater offense,’ Apprendi, 530 U.S. at 494, n. 19, 120 S.Ct. 2348 the Sixth Amendment requires that they be found by a jury.” Then, in Schriro v. Summerlin, 542 U.S. 348, 358, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004), the Supreme Court applied the federal , retroactivity analysis of Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), to Ring and concluded that the case announced a new rule of procedure that “altered the range of permissible methods for determining whether a defendant’s conduct is punishable by death, requiring that a jury rather than a judge find the essential facts bearing on punishment.” Summerlin, 542 U.S. at 353, 124 S.Ct. 2519. Accordingly, the Court held that Ring established a new procedural rule that did “not apply retroactively to cases already final on direct review.” Id. at 358, 124 S.Ct. 2519. The next year, this Court agreed that the rule in Ring was procedural and ruled, as we did with Apprendi, that Ring did not apply retroactively to final cases in Florida. Johnson v. State, 904 So.2d 400, 412 (Fla.2005).
Four years after deciding Apprendi, the Supreme Court again addressed the limits of judicial sentencing power. In Blakely, the defendant, like Apprendi, pleaded guilty to reduced charges, “admitting the elements of second-degree kidnaping” and other charges. Blakely, 542 U.S. at 299, 124 S.Ct. 2531. The Washington statute provided a maximum term of ten years for the kidnapping, but another provision specified a “ ‘standard range’ of 49 to 53 months” for second-degree kidnapping with a firearm. Id. As authorized under the statute, the trial court imposed a sentence that exceeded the standard range but not the ten-year statutory maximum after making • the additional finding that Blakely acted with “deliberate cruelty.” Id. at 300, 124 S.Ct. 2531. The Supreme Court rejected Washington’s contention that the sentence was lawful.’
*860 Our precedents make clear, however, that the “statutory maximum” for Ap-prendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant In other words, the relevant “statutory maximum” is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings. When a judge inflicts punishment that the jury’s verdict alone does not allow, the jury has not found all the facts “which the law makes essential to the punishment, ” and the judge exceeds his proper authority.
Blakely, 542 U.S. at 303-04, 124 S.Ct. 2531 (citations omitted) (some emphasis added). The Court explained that the “ ‘maximum sentence’ [in Blakely ] is no more 10 years here than it was 20 years in Apprendi (because that is what the judge could have imposed upon finding a hate crime) or death in Ring (because that is what the judge could have imposed upon finding an aggravator).” Id. at 304, 124 S.Ct. 2531. Accordingly, the Court reversed and remanded the case. Id. at 314, 124 S.Ct. 2531.
As with Apprendi, the decision in Blakely raised the question of whether the rule it announced regarding the statutory maximum permissible sentence applied retroactively to final cases. Neither the Supreme Court nor this Court has previously ruled on this issue. However, this Court has made clear that in retroactivity analysis regarding Apprendi and Blakely, we focus on the finality of the sentence, not the conviction. In State v. Fleming, 61 So.3d 399, 400 (Fla.2011), we addressed the issue of whether Apprendi and Blakely apply to de novo resentencing proceedings held after these cases were issued. We held that “[rjegardless of whether a defendant’s conviction and sentence were final before Ap-prendi and Blakely issued, ... where a defendant’s resentencing was not final when Apprendi and Blakely issued, the rules established in these cases apply to that de novo proceeding.” Fleming, 61 So.3d at 408.
B. Conflict Between the Decisions of the District Courts’ of Appeal
Relying on its prior decisions in Isaac and Monnar, the First District granted Johnson postconviction relief and reasoned that Blakely’s definition of “statutory maximum” applied to Johnson’s 2002 resen-tencing. Johnson, 18 So.3d at 625. By applying — on collateral review — the 2004 decision in Blakely to a criminal sentence that was final before Blakely was decided, the district court applied the decision retroactively. This holding expressly and directly conflicts with the Fourth District’s decision in Thomas v. State, 914 So.2d 27 (Fla. 4th DCA 2005). In that case, the defendant’s sentence, like Johnson’s, was final, post -Apprendi but pre-Blakely. Thomas, 914 So.2d at 28. Also like Johnson, Thomas filed a Florida Rule of Criminal Procedure 3.800(a) motion in which he claimed that his sentence was illegal under Blakely.[1] The Fourth District affirmed the summary denial of Thomas’s illegal sentence claim as follows:
The Supreme Court of Florida held in Hughes v. State, 901 So.2d 837 (Fla.2005), that Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), did not apply retroactively. It did not address the retroactivity of *861 Blakely, but, on the authority above, we conclude that there is no retroactivity of this decision either. Appellant’s sentences became final in 2002, pre-Blakely but post-Apprendi Since his challenge is based on Blakely, and as it is not retroactive, we conclude that the trial court did not err in rejecting this claim.
Thomas, 914 So.2d at 28. Accordingly, the Fourth District held that Blakely does not apply retroactively to Thomas’s pre-Blakely sentence and disagreed with the First District’s application of Blakely to cases in which a defendant’s sentence was final before Blakely was decided. Like the Fourth District, other district courts also have held that Blakely does not apply retroactively to final sentences. See, e.g., Boardman v. State, 69 So.3d 367, 369 (Fla. 2d DCA 2011) (“No matter how one measures the finality of his sentences, they were final before Blakely issued. Accordingly, he is not entitled to [postconviction] relief under Blakely.”); Osborn v. State, 915 So.2d 189, 190 (Fla. 3d DCA 2005) (“[T]he defendant’s sentence became final prior to the announcement of Blakely, and Blakely is not retroactive.”).
C. Whether Blakely Applies Retroactively
When this Court or the United States Supreme Court announces a new rule of law, the decision generally applies to all cases that are pending on direct review or are not yet final. See Griffith v. Kentucky, 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1986) (holding that any new rule for conducting criminal trials announced by the Court applies “retroactively to all cases, state or federal, pending on direct review or not yet final”); see also Smith v. State, 598 So.2d 1063, 1066 (Fla.1992) (“[A]ny decision of this Court announcing a new rule of law, or merely applying an established rule of law to a new or different factual situation, must be given retrospective application by the courts of this state in every case pending on direct review or not yet final.”), limited by Wuomos v. State, 644 So.2d 1000, 1007 n. 4 (Fla.1994) (“We read Smith to mean that new points of law established by this Court shall be deemed retrospective with respect to all non-final cases unless this Court says otherwise.”). Thus, once a case is final, the State acquires a substantial interest in its finality that “should be abridged only when a more compelling objective appears, such as ensuring fairness and uniformity in individual adjudications.” Witt v. State, 387 So.2d 922, 925 (Fla.1980). To determine whether the decision in Blakely contains a new rule that should be applied retroactively to final sentences, we apply the analysis outlined in Witt. See Danforth v. Minnesota, 552 U.S. 264, 280-81, 288-89, 128 S.Ct. 1029, 169 L.Ed.2d 859 (2008) (holding states are not bound by retroactivity analysis of Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), and may grant broader retroactive relief for federal constitutional violations in state court proceedings).
1. Blakely Announced a New Rule
The first question we address is whether the Supreme Court announced a new rule of law in Blakely. The Court described what constitutes a new rule.
In general, ... a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government. To put it differently, a case announces a new rule if the result was not dictated by precedent existing at the time the defendant’s conviction became final.
Teague, 489 U.S. at 301, 109 S.Ct. 1060 (citations omitted).
As stated previously, in Appren-di the Supreme Court held that “[o]ther *862 than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.” 530 U.S. at 490, 120 S.Ct. 2348. Then, in Blakely, the Court held that the “ ‘statutory maximum’ for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.” 542 U.S. at 303, 124 S.Ct. 2531. The Court stated that the definition of “statutory maximum” it announced was clearly expressed in Apprendi. Id. However, the definition of “statutory maximum” announced in Blakely was not clear to the other federal courts or to the state courts. As one federal circuit court explained, “The rule announced in Blakely is based in the Constitution and was not dictated or compelled by Apprendi or its progeny. In fact, before Blakely was decided, every federal court of appeals had held that Ap-prendi did not apply to guideline calculations made within the statutory maximum.” Simpson v. United States, 376 F.3d 679, 681 (7th Cir.2004) (citing cases).
Most courts in Florida agreed that under Apprendi, a judge could continue to make findings as long as the sentence imposed did not exceed the maximum sentence prescribed by statute for particular types of offenses. See, e.g., Hall v. State, 823 So.2d 757, 764 (Fla.2002) (“Because the sentence for each of Hall’s offenses did not exceed the statutory maximum, we conclude that Apprendi is inapplicable.”); McCloud v. State, 803 So.2d 821, 827 (Fla. 5th DCA 2001) (en banc) (on remand from United States Supreme Court) (“We hold that, in Florida, for purposes of determining a constitutional violation under Ap-prendi, the relevant statutory maximum is found in section 775.082[, Florida Statutes]. We choose this answer to the question posed by the United States Supreme Court’s remand because it is our best guess about what Apprendi means.”). Other states’ courts reached this same conclusion. See, e.g., State v. Smart, 202 P.3d 1130, 1140 (Alaska 2009) (“Before Blakely was decided, courts consistently held that Apprendi did not apply to sentences within the statutory maximum. The rule in Blakely was clearly not apparent to all courts and was not dictated by precedent.”) (footnotes omitted); Carmichael v. State, 927 A.2d 1172, 1177 (Me.2007) (noting that only the majority in Blakely thought Apprendi dictated its holding); People v. Johnson, 142 P.3d 722, 726 (Colo.2006) (“Blakely was not apparent to all reasonable jurists. On the contrary, a great many reasonable jurists failed to foresee the Blakely rule.”); State v. Houston, 702 N.W.2d 268, 271 (Minn.2005) (“Prior to Blakely, ‘statutory maximum’ was generally thought to mean the heaviest penalty a court could impose on a defendant — the ceiling of the relevant statutory sentencing range.”); State v. Evans, 154 Wash.2d 438, 114 P.3d 627, 629 (2005) (“In Blakely, the Supreme Court clarified that the ‘statutory maximum’ did not refer to the maximum sentence authorized by the legislature for the crime (as almost every court considering the issue had concluded).”). Accordingly, we conclude that Blakely announced a new rule.
Because Blakely established a new rule, we necessarily .reject the First District’s contrary conclusion expressed in Isaac— and applied in this case — that Blakely “clarified” Apprendi and applies retroactively. See Isaac, 911 So.2d at 814-815. The district court’s decision tacitly rests on the due process discussion in the Supreme Court’s decision in Fiore v. White, 531 U.S. 225, 121 S.Ct. 712, 148 L.Ed.2d 629 (2001), which has no application here. In that case, although Fiore held a valid permit for operating a hazardous waste facility, he was convicted of the crime of operat *863 ing the facility without a permit based on the prosecution’s theory that Fiore had “deviated so dramatically from the permit’s terms” that he effectively had no permit. 531 U.S. at 227, 121 S.Ct. 712. Subsequently, the Pennsylvania Supreme Court reversed Fiore’s codefendant’s conviction for the same crime, holding that the statute meant what it said, i.e., without a permit means without a permit. Id. (citing Commonwealth v. Scarpone, 535 Pa. 273, 634 A.2d 1109, 1112 (1993)). However, Fiore’s efforts to have his conviction overturned in federal habeas proceedings were spurned on the ground that the holding in his codefendant’s case constituted a new rule of law that did not apply retroactively. The Supreme Court reversed and remanded. Citing the Pennsylvania high court’s response to its inquiry, the Court noted that the state court “specifie[d] that the interpretation of [the relevant statute] set out in Scarpone ‘merely clarified’ the statute and was the law of Pennsylvania — as properly interpreted — at the time .of Fiore’s conviction.” 531 U.S. at 228, 121 S.Ct. 712 (emphasis added). “Thus, Fiore requires vindication of due process guarantees by ensuring that each essential element of an offense at the time a conviction becomes final is proved beyond a reasonable doubt.” State v. Barnum, 921 So.2d 513, 522 (Fla.2005) (emphasis added). Unlike Fiore, the state of the law concerning the elements of the crimes for which Johnson was convicted was not at issue in this case. Yet, the First District granted post-conviction relief based on its unelaborated determination that Blakely clarified Ap-prendi. The First District’s conclusory decision could effectively open the floodgates for postconviction claims any time a court interprets a criminal statute or comments on its own decisional law. As explained above, we conclude that the decision in Blakely announced a new rule of law and “the question of the retroactivity of decisions should be controlled solely by Witt.” Bamum, 921 So.2d at 524;
2. Blakely Is Not Fundamentally Significant
To be given retroactive application to cases on collateral review, a change of law must “(a) emanate[ ] from this Court or the .United States Supreme Court, (b) [be] constitutional in nature, and (c) constitute!] a development of fundamental significance.” Witt, 387. So.2d at 931. The rule announced in Blakely plainly meets the first two criteria, but for the reasons explained below, we conclude it does not have fundamental significance. Accordingly, Blakely does not apply retroactively.
A law that is fundamentally significant will generally fall within one of two categories. The first category refers to “those changes of law which place beyond the authority of the state the power to regulate certain conduct or impose certain penalties.” Witt, 387 So.2d at 929. The second category contains changes that “are of sufficient magnitude to necessitate retroactive application” under the three-part test of Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), and Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), that is, changes that constitute “jurisprudential upheavals.” Id. The parties correctly agree that the Blakely rule does not fall within the first category. Accordingly, the determination of fundamental significance must be analyzed under the Linkletter/Sto-vall three-part test.
[T]he essential considerations in determining whether a new rule of law should be applied retroactively are essentially three: (a) the purpose to be served by the new rule; (b) the extent of reliance on the old rule; and (c) the effect on the administration of justice of a retroactive application of the new rule.
*864 Witt, 387 So.2d at 926. In considering whether the Blakely rule should be given retroactive application, the Court is guided by the kinds of decisional changes that do not qualify for retroactive application.
In contrast to these jurisprudential upheavals are evolutionary refinements in the criminal law, affording new or different standards for the admissibility of evidence, for procedural fairness, for proportionality review of capital cases, and for other like matters. Emergent rights in these categories, or the retraction of former rights of this genre, do not compel an abridgement of the finality of judgments. To allow them that impact would, we are convinced, destroy the stability of the law, render punishments uncertain and therefore ineffectual, and burden the judicial machinery of our state, fiscally and intellectually, beyond any tolerable limit.
Id. at 929-30 (footnote omitted).
a. The Purpose of the New Rule
When we considered in Hughes whether Apprendi was retroactive, we recognized that the rule announced was “intended to guard against erosion of the Sixth Amendment’s guarantee of the right to jury trial, by requiring that a jury decide the facts supporting a sentence that exceeds the statutory maximum.” Hughes, 901 So.2d at 841. We understood that Apprendi permitted judges to make factual findings “as long as the resulting sentence [did] not exceed the statutory maximum,” prescribed by the applicable statute. Id. By limiting the “statutory maximum” to the sentence congruent with the facts “reflected in the jury verdict or admitted by the defendant,” Blakely, 542 U.S. at 303, 124 S.Ct. 2531 (original emphasis omitted), however, the Supreme Court altered the effect of Apprendi. As we stated above, courts interpreting Apprendi reasoned that judges still had the power to make findings of facts affecting the sentence as long as the statutory maximum contained in the Florida Statutes was not exceeded. Under Blakely, courts no longer have that power under determinate sentencing schemes. The Supreme Court explained:
Just as suffrage ensures the people’s ultimate control in the legislative and executive branches, jury trial is meant to ensure their control in the judiciary. Apprendi carries out this design by ensuring that the judge’s authority to sentence derives wholly from the jury’s verdict. Without that restriction, the jury would not exercise the control that the Framers intended.
Blakely, 542 U.S. at 306, 124 S.Ct. 2531 (citations omitted) (emphasis added).
Blakely did not end judicial factfinding, however. The Court stated that the “Sixth Amendment ... is not a limitation on judicial power, but a reservation of jury power,” explaining that under indeterminate sentencing schemes judicial discretion increases “but not at the expense of the jury’s traditional function of finding the facts essential to lawful imposition of the penalty.” Id. at 308-09, 124 S.Ct. 2531. The Court continued:
Of course indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion. But the facts do not pertain to whether the defendant has a legal right to a lesser sentence — and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned.
Id. at 309,124 S.Ct. 2531.
Although the Court explained the purpose of the rule in Blakely in terms of vindicating an individual’s constitutional rights to jury trial and due process, this *865 does not necessarily weigh in favor of the rule’s retroactive application. In Washington v. Recuenco, 548 U.S. 212, 222, 126 S.Ct. 2546, 165 L.Ed.2d 466 (2006), the United States Supreme Court held that “[f]ailure to submit a sentencing factor to the jury, like failure to submit an element to the jury, is not structural error,” i.e., not plain or fundamental error. Accordingly, the Court held that Blakely error is subject to harmless error analysis. Recuenco, 548 U.S. at 222, 126 S.Ct. 2546. This Court followed suit, holding that “harmless error analysis applies to Ap-prendi and Blakely error.” Galindez v. State, 955 So.2d 517, 524 (Fla.2007). Moreover, we also have held that the rules announced in Apprendi and Ring do not apply retroactively. Hughes, 901 So.2d at 838; Johnson, 904 So.2d at 412. In addition, we note that in holding Ring was not retroactive, the Supreme Court observed that it had previously determined that even the right to a jury trial established in Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), was not retroactive. Summerlin, 542 U.S. at 358, 124 S.Ct. 2519 (citing its decision in DeStefano v. Woods, 392 U.S. 631, 633, 88 S.Ct. 2093, 20 L.Ed.2d 1308 (1968)). Accordingly, we conclude that this factor weighs against Blakely’s retroactive application to sentences final before it issued,
b. Extent of Reliance on the Old Rule
The second consideration in determining whether a new constitutional rule applies retroactively is the extent of reliance on the prior rule. In holding that Apprendi was not retroactive to final sentences, we determined that Florida had relied on trial court findings in sentencing for a significant period. Hughes, 901 So.2d at 845 (“Trial courts have long exercised discretion in sentencing.”). This conclusion applies here as well. Johnson concedes this point but argues that Blakely would apply retroactively only to post-Apprendi sen-tencings or resentencings. This argument relies on the view espoused by the First District that Blakely merely clarified Ap-prendi, a view we have rejected as explained above. We have concluded that Blakely announced a new rule that redefines the statutory maximum sentence that may be imposed. Thus, the question of retroactivity is not necessarily limited to the intervening four years between the issuance of Apprendi and Blakely. Even if limited to this period, however, the impact, as explained below, would be significant.
c. Effect on the Administration of Justice
In Hughes, we concluded that applying Apprendi retroactively to final cases would have an adverse impact on the administration of justice. 901 So.2d at 846. We stated that retroactive application
would require review of the record and sentencing proceedings in many cases simply to identify cases where Apprendi may apply. In every case Apprendi affects, a new jury would have to be empaneled to determine, at least, the issue causing the sentence enhancement. In most cases, issues such as whether the defendant possessed a firearm during the commission of a crime, the extent of victim injury or sexual contact, and whether a child was present (to support use of the domestic violence multiplier) cannot be considered in isolation. Many, if not all, of the surrounding facts would have to be presented. In others, a jury would have to determine factors unrelated to the case (e.g., whether legal status points may be assessed).
Id. at 845-46 (footnote omitted). We reach the same conclusion here.
Retroactive application of the rule announced in Blakely would require review of the records of numerous cases, first to *866 determine whether Blakely error occurred, then whether such error was preserved, and finally, whether the error was harmless. In those cases where a claim for postconviction relief survives such review, juries would likely have to be empaneled to hear evidence and determine sentence enhancements. All told, this would be a time-consuming undertaking that would significantly strain our scarce court resources. Even if the retroactive application extended only to cases finalized in the interval between the issuance of Apprendi and Blakely, the disruption would be significant. Accordingly, this factor also weighs against applying Blakely retroactively.
III. CONCLUSION
For the reasons discussed above, we conclude that the new constitutional rule announced in Blakely does not apply retroactively to sentences or resentences that were final when it issued. Accordingly, we quash the First District’s decision in Johnson, and we approve the Fourth District’s decision in Thomas.
It is so ordered.
POLSTON, C.J., and LEWIS, QUINCE, LABARGA, and PERRY, JJ., concur.
PARIENTE, J., concurs in result.

. The only procedural difference between the cases is that Johnson sought retroactive application of Blakely to his 2002 de novo resen-tencing and Thomas claimed Blakely applied to his 2002 original sentence. This difference, however, does not affect our conflict analysis.