458 So.2d 226 (1984)
Tommy S. GROOVER, Appellant,
v.
STATE of Florida, Appellee.
No. 63375.
Supreme Court of Florida.
September 6, 1984.
Rehearing Denied November 28, 1984.
Michael E. Allen, Public Defender and Glenna Joyce Reeves, Asst. Public Defender, Second Judicial Circuit, Tallahassee, for appellant.
Jim Smith, Atty. Gen. and Barbara A. Butler, Asst. Atty. Gen., Jacksonville, for appellee.
*227 PER CURIAM.
This cause is before the Court pursuant to jurisdiction granted in article V, section 3(b)(1), Florida Constitution, for review of death penalties imposed following convictions of first-degree murder. We affirm the convictions and sentences.
On February 6, 1982, Tommy S. Groover, Robert Parker, and his wife, Elaine Parker, forced Richard Allen Padgett to leave a nightclub, where he had been drinking in the company of his girlfriend, Nancy Sheppard. Parker was enraged because Groover had supplied Padgett with drugs Groover was selling for Parker, but Padgett had not paid for them. Padgett was taken to Parker's junkyard and beaten; then he was taken to a wooded area and shot. His throat was cut and his body was thrown in a ditch.
Groover and the Parkers melted the barrel of the handgun, then went to a bar. At the bar a young woman, Jody Dawn Dalton, attached herself to Groover and, with Parker's permission, accompanied the group as it went to dispose of the gun and to pick up another woman, Joan Bennett, who could tell them where Nancy Sheppard lived. Later, as the group drove in Elaine's car toward Donut Lake, Groover asked Dalton to perform fellatio on him; she complied. Moments later, Elaine caused a fight between Dalton and Bennett by accusing Bennett of "messing around" with Groover. The two women got out of the car and fought. Either during this fight or later, Dalton's clothing was removed. At the lake, she was shot five times, her body anchored with cement blocks and thrown in the lake. Bennett testified that Groover had kicked and beaten Dalton before shooting her. Groover claimed that Parker had shot Dalton while Groover remained in the car.
Next, the group picked up Nancy Sheppard at her home and Billy Long at his and drove to the scene of the Padgett murder. Long was given a gun and shown Padgett's body in the ditch. He was told that unless he killed Sheppard, his body would lie in the ditch, too. Sheppard was taken to the ditch. Upon seeing her boyfriend's corpse, she fell to her knees and began to cry. Long then shot her and Parker stabbed her. Groover allegedly screamed from the car, "She's still breathing! Shoot her again! Shoot her again!" Parker took Sheppard's necklace and class ring from her body and her body was thrown into the ditch with Padgett's.
Groover was originally charged with the Padgett and Sheppard murders. Pursuant to a negotiated plea bargain, he was allowed to plead guilty to the Padgett murder only, with a binding recommendation by the state of imposition of a life sentence. In exchange, Groover was to cooperate with the state in preparation of its cases against Robert and Elaine Parker on all three murders. To this end, he made two inculpatory sworn statements. Later, after changing attorneys, Groover withdrew his guilty plea. He also sought to suppress his earlier statements.
At trial, Groover's statements were admitted as part of the state's case-in-chief. Bennett and Long also testified about Groover's active participation in the Dalton and Sheppard murders. Groover took the stand in his own behalf and urged a defense of duress arising from his fear of Robert Parker.
The jury convicted Groover of first-degree murder on all three counts. It recommended death for the murder of Jody Dalton and life imprisonment for the Padgett and Sheppard murders. The judge sentenced Groover to death for the Padgett and Dalton murders and to life for the Sheppard murder.
In challenging the convictions, Groover raises several issues, only one of which merits detailed discussion. Citing Florida Rule of Criminal Procedure 3.172(h)[1] and section 90.410, Florida Statutes *228 (1981),[2] Groover claims the sworn statement made May 17 which was admitted into evidence in the state's case in chief was a statement made in connection with a negotiated plea, and therefore the statement was inadmissible. This Court has not heretofore considered whether a sworn statement made in fulfillment of a negotiated plea bargain  as opposed to a statement made to induce or to enhance negotiations  is a statement made in connection with a plea for purposes of the rule or of the statute. Florida's limitation on the use of such statements is derived from the analogous federal rule and this Court has looked to judicial gloss of the federal rule in construing the state version. See e.g., Bottoson v. State, 443 So.2d 962 (Fla. 1983); Anderson v. State, 420 So.2d 574 (Fla. 1982). Federal Rule of Criminal Procedure 11(e)(6), the federal counterpart to Florida Rule of Criminal Procedure 3.172(h), was adopted to promote plea bargaining by allowing a defendant to negotiate without waiving fifth amendment protection. "The most significant factor in the rule's adoption was the need for free and open discussion between the prosecution and the defense during attempts to reach a compromise." United States v. Davis, 617 F.2d 677, 683 (D.C. Cir.1979) (emphasis added). This Court has applied the federal courts' narrow construction of Rule 11(e)(6) to Florida Rule of Criminal Procedure 3.172(h) by adopting the two-tiered analysis from United States v. Robertson, 582 F.2d 1356 (5th Cir.1978), for determining whether a statement falls within the ambit of the exclusion. Anderson, 420 So.2d at 577. The first tier of this analysis is "whether the accused exhibited an actual subjective expectation to negotiate a plea at the time of the discussion." 582 F.2d at 1366. (Emphasis supplied.) When an agreement has been reached, further statements cannot be made in the expectation of negotiating a plea. Nor does the policy of fostering frank discussion between prosecution and defense require extending protection to statements made in fulfillment of an agreed-to bargain.
In a strikingly similar case, United States v. Stirling, 571 F.2d 708 (2d Cir.), cert. denied, 439 U.S. 824, 99 S.Ct. 93, 58 L.Ed.2d 116 (1978), one defendant agreed to plead guilty to one charge and to testify truthfully before the grand jury in exchange for dismissal of any other counts charged. He testified immediately after agreeing to the bargain and before entry of his plea. The indictment returned was unsatisfactory to him on various grounds. Therefore, he withdrew from the plea agreement and pleaded not guilty. The Second Circuit upheld the trial court's refusal to suppress the grand jury testimony, noting:
The plea agreement had already been reached by the time Schulz went before the Grand Jury. The negotiations were over. All Schulz had to do was live up to his end of the bargain. His failure to do so justly exposed him to prosecutorial use of his Grand Jury testimony.
571 F.2d at 731-32. The court went on to note that the plea agreement had expressly warned Schulz that any information he provided would be used to prosecute him if he breached the plea agreement. The record clearly shows that this same warning was an express feature of the plea bargain Groover entered. We find no error in the admission of this statement.
We have considered all other issues raised relative to the guilt phase and have independently reviewed the entire record of all three convictions and find no error *229 which would require reversal. The three convictions for first-degree murder are affirmed.
Groover asks this Court to remand the sentence on grounds that the findings of fact in the same trial judge's sentencing order for Robert Parker, Groover's co-conspirator, were tantamount to a finding of the statutory mitigating circumstance that Groover acted "under extreme duress or under the substantial domination of another person." § 921.141(6)(e), Fla. Stat. (1981). A copy of the Parker sentencing order was made a part of the record on appeal.[3]
In sentencing Parker, the judge noted that he had threatened Groover with death if the drug debt was not repaid. The court found that Parker's participation in the murders was "major and predominant." We recognize that threats of death or grievous bodily harm may in some instances support a finding of "substantial domination" or "extreme duress," but we do not find that such threats require finding this factor in mitigation. The trial judge fully explained his refusal to find in Groover's favor on this issue.
The defendant claimed that he acted under extreme duress and domination of Robert Parker  but other than his own testimony  the evidence was to the contrary. Witnesses stated that defendant and Mr. Parker were friends of long standing and both dealers in drugs. On various occasions during the hours of the crime each of them was armed while the other was not. Had defendant been threatened at any time by Parker, he had the opportunity and weapons with which to escape or to defend himself.
The evidence of this seven-day trial belies defendant's contention of duress and/or dominance of Parker or any other person. In fact, it was the action of defendant in trying to collect the drug debt from Padgett which set the entire sequence of homicidal events into motion.
We find no contradiction between the findings that Groover was threatened and that he never availed himself of any opportunity to escape the threat, but rather participated fully and willingly in all three murders.
Neither do we find error in the trial judge's override of the jury's recommendation that Groover receive a life sentence for the Padgett murder. No mitigating circumstances were found concerning Groover's participation in any of the homicides. The Padgett murder was found to have been committed by one previously convicted of violent felony (the Dalton and Sheppard murders), to have been committed during the commission of a kidnapping, to have been especially heinous, atrocious and cruel, and to have been cold, calculated and premeditated. In the face of the existence of these four aggravating circumstances, we find nothing in the facts of this case upon which the jury could rationally have based the recommendation of a life sentence. See Tedder v. State, 322 So.2d 908 (Fla. 1975).
We have considered all other objections raised to the penalty phase and have compared the facts of this case to others in which the death penalty has been appropriately assessed and find no grounds for vacating the sentence.
Accordingly, the convictions and sentences in this case are affirmed.
It is so ordered.
BOYD, C.J., and ADKINS, OVERTON, ALDERMAN, EHRLICH and SHAW, JJ., concur.
McDONALD, J., concurs in part and dissents in part with an opinion.
McDONALD, Justice, concurring in part/dissenting in part.
I agree that Groover was properly convicted on three counts of first-degree murder. *230 I also agree that the death penalty imposed for the Dalton homicide is proper and should be affirmed.
Because the jury recommended a life sentence on the Padgett murder, I feel that only a life sentence should be imposed for that homicide.
NOTES
[1] Florida Rule of Criminal Procedure 3.172(h) provides:

Except as otherwise provided in this Rule, evidence of an offer or a plea of guilty or nolo contendere, later withdrawn, or of statements made in connection therewith, is not admissible in any civil or criminal proceeding against the person who made the plea or offer.
[2] Section 90.410, Florida Statutes (1981), provides:

Offer to plead guilty; nolo contendere; withdrawn pleas of guilty.  Evidence of a plea of guilty, later withdrawn; a plea of nolo contendere; or an offer to plead guilty or nolo contendere to the crime charged or any other crime is inadmissible in any civil or criminal proceeding. Evidence of statements made in connection with any of the pleas or offers is inadmissible, except when such statements are offered in a prosecution under chapter 837.
(Emphasis supplied.)
[3] Because we find no contradiction between the two sentencing orders, we do not need to look behind the order to the record of Parker's trial to see what, if any, differences in evidence could support the findings of fact in that order. Nor do we express any view on the propriety of doing so. We will save that issue until we are presented with sentencing orders which are, in fact, facially irreconcilable.