704 So.2d 1368 (1997)
Anton D. MEYERS, Appellant,
v.
STATE of Florida, Appellee.
No. 85617.
Supreme Court of Florida.
March 13, 1997.
Rehearing Denied January 23, 1998.
Ed Leinster, Orlando, for Appellant.
Robert A. Butterworth, Attorney General, and Kenneth S. Nunnelley, Assistant Attorney General, Daytona Beach, for Appellee.
PER CURIAM.
We have on appeal the trial court's judgment of conviction and sentence of death imposed upon Anton D. Meyers for the murder of Kathy Engels. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
*1369 Fourteen-year-old Kathy Engels' body has never been found. She was last seen with Meyers in the early morning hours of May 25, 1987. Testimony at trial revealed the following sequence of events: On the evening of May 24, Kathy's grandparents dropped her off at a convenience store where she encountered Meyers and her friends Lorna Brown and Autumn Pemberton. The group left to drink beer at Meyers' house before proceeding to Lorna's home. Around midnight, after Lorna's mother left for work, Lorna, Kathy, and Meyers went back to Meyers' house where they drank more beer. They returned to Lorna's house shortly before 2 a.m. so that Lorna would be there when her father woke up to leave for work. When Lorna's father found Meyers and Kathy hiding in the closet in Lorna's bedroom, he became angry and they left.
That afternoon, Kathy's grandparents tried to contact her at the Browns' home. After speaking to Lorna's mother, Kathy's grandparents realized that Kathy had not spent the night there and they began to look for her. When questioned, Meyers told Lorna and later the investigating officer that Kathy had asked him to take her home, that he had borrowed his sister's car to do so, and that he and Kathy stopped at a convenience store on the way to Kathy's house. Meyers said he talked to two girls while Kathy used the pay phone, and when he looked back at the phone booth, she had disappeared.
Statements by Meyers to inmates with whom he was incarcerated establish the details of his attempted sexual battery and murder of the fourteen-year-old victim. Photographs of Meyers' injuries, which were taken shortly after Kathy disappeared, corroborate his statements that she resisted violently before he was able to kill her by slashing her throat.
On June 17,1994, a jury found Meyers guilty of first-degree murder. Meyers was evaluated by a psychiatrist before the penalty phase and found competent to waive the presentation of mitigation. The jury recommended death by a unanimous vote, and on March 17, 1995, the trial court sentenced him to death. The court found two aggravating factors,[1] no statutory mitigating factors,[2] and four non-statutory mitigating factors.[3] Meyers raises three issues on appeal.[4]
Meyers first argues that the court admitted his confessions without receiving sufficient evidence of corpus delicti. We disagree. The phrase "corpus delicti" refers to proof independent of a confession that the crime charged was in fact committed. Bassett v. State, 449 So.2d 803, 807 (Fla.1984). In order to prove corpus delicti in a homicide case, the state must establish: (1) the fact of death; (2) the criminal agency of another person as the cause thereof; and (3) the identity of the deceased person.[5]Id. Regarding the second elementthe criminal agency of anotherthe proof need not show that the defendant committed the crime. Burks v. State, 613 So.2d 441, 443 (Fla.1993).
To admit a defendant's confession, the state must prove the corpus delicti either by direct or circumstantial evidence. Bassett, 449 So.2d at 807; State v. Allen, 335 So.2d 823, 825 (Fla.1976). It is enough if the evidence tends to show that the crime was committed; proof beyond a reasonable doubt is not mandatory. Bassett, 449 So.2d at 807; *1370 Allen, 335 So.2d at 825. To support a conviction, however, the corpus delicti must be established beyond a reasonable doubt. Id.; Cross v. State, 96 Fla. 768, 119 So. 380, 384 (1928).
Because Engels' body was never found, the state offered the following circumstantial evidence to prove the corpus delicti: Kathy had a good relationship with her grandparents; she never expressed a desire or intent to run away from home to any of her friends; she was looking forward to starting high school in the fall because she had made the high school dance team; she asked her friend Autumn Pemberton if she could spend the night with her; Meyers exhibited physical injuries consistent with a violent confrontation and bore a mark on his side consistent with shoes Kathy was wearing at the time she disappeared; both defense and state experts testified that some of the scratches on Meyers' body were consistent with fingernail scratches; when her grandparents dropped her off in Lorna Brown's neighborhood, Kathy left her purse (containing her money and personal items) in their car and told her grandmother that she did not need it because she would be gone for only one hour; none of Kathy's things were missing from her room, including cash left in her dresser; and no one ever attempted to withdraw the $200 left in her bank account. We conclude that the state introduced sufficient circumstantial evidence to prove the corpus delicti of the homicide and to lay the predicate for admission of Meyers' inculpatory statements. See Allen, 335 So.2d at 826.
We next reject Meyers' claim that the evidence was insufficient to sustain his conviction. Meyers argues that the state's case was entirely circumstantial; therefore, the special standard for sufficiency of the evidence in circumstantial evidence cases applies; i.e., the evidence must not only be consistent with the defendant's guilt but it must also be inconsistent with any reasonable hypothesis of innocence. Cox v. State, 555 So.2d 352, 353 (Fla.1989); Davis v. State, 90 So.2d 629, 631 (Fla.1956). We disagree that the case was entirely circumstantial. Meyers' former cellmates testified that Meyers confessed to the murder. Because confessions are direct evidence, the circumstantial evidence standard does not apply in the instant case. See Hardwick v. State, 521 So.2d 1071, 1075 (Fla.), cert. denied, 488 U.S. 871, 109 S.Ct. 185, 102 L.Ed.2d 154 (1988).
In addition to the circumstantial evidence set forth above, Meyers stated the following to former cellmates: Kathy resisted violently to his sexual advances by kicking and scratching him; he cut her throat with a knife and buried her body under some concrete; he covered Kathy with a car hood; her body would never be found; he killed a girl by cutting her throat, and when a victim is killed in that way, she will fight for an extended period of time; he wanted to return to the scene to get Kathy's head so that the body could not be identified; he disposed of the body in the woods near a canal or a ditch, and he piled chunks of concrete on top of her body; Kathy teased him, he forced himself on her, and when the intercourse was over, she was dead; he and Kathy smoked marijuana, Kathy refused to have sex with him and when he tried to force her, she fought back. He pulled a knife to scare her and she clawed him, so he slashed her throat. We find this evidence sufficient to sustain the murder conviction.
When Father James Spencer questioned him about the newspaper articles identifying him as a suspect, Meyers said that the only evidence was circumstantial and that Gary DeMay was his "alibi" that the murder was not premeditated. Based upon the foregoing circumstantial and direct evidence, we find that the state presented sufficient evidence for a jury to conclude that Kathy Engels is dead and that Meyers killed her.
Finally, Meyers argues that the trial court should have granted his motion to suppress photographs of his body showing scratch marks and a footprint. Meyers contends that Officer Taggart observed the marks on his body after unlawfully entering his residence, then without his consent, photographed his injuries the next day while he was in jail for an unrelated offense. We find no merit to Meyers' contentions that Officer Taggart entered his residence illegally or that the photographs were obtained unlawfully. *1371 When Officer Taggart learned there was a young girl at Meyers' residence, he went there to see whether she was Kathy Engels. The girl who answered the door was not Engels and upon Taggart's request, she allowed him to enter. Taggart found Meyers in the living room without a shirt on and he observed scratches on Meyers' chest, stomach, and right arm which appeared to be consistent with human scratch marks. The next day when Meyers was being processed in the county jail for failing to appear for a violation of probation matter, Taggart questioned him further as to his knowledge of Engels' disappearance and then took pictures of the scratch marks. Meyers testified that he was forced to submit to the photographs and was denied his request for an attorney; Taggart testified that Meyers consented, was cooperative, and never asked for an attorney. The trial court found Meyers' testimony to be unbelievable and denied his motion to suppress the photographs. The trial court further reasoned that Meyers' constitutional rights were not violated because no evidence was found or seized and Meyers had been out in public with his shirt off between the time he gave his initial statement to police and the time Taggart went to his home. Meyers has shown no error in the trial court's denial of his motion to suppress.
We have also considered whether the death sentence in this case is proportionate to other cases wherein a death sentence has been approved and find the sentence proportionate here. We therefore affirm the first-degree murder conviction and sentence of death.
It is so ordered.
KOGAN, C.J., and OVERTON, SHAW, GRIMES, HARDING, WELLS and ANSTEAD, JJ., concur.
NOTES
[1] Aggravating factors: (1) Meyers had previously been convicted of another capital felony or a felony involving the use or threat of violence to a person, and (2) the capital felony was committed while Meyers was engaged in the commission of, or attempt to commit, or escape after committing a sexual battery.
[2] Meyers presented no statutory mitigation.
[3] Non-statutory mitigating factors: (1) Meyers is capable of rehabilitation; (2) he did volunteer work and participated in church activities between 1990 and 1992; (3) he was not arrested between 1990 and 1993; (4) he exhibits usual feelings and emotions and does not exhibit serious psycopathology or anti-social personality. The court gave little weight to the first three factors and some weight to the fourth.
[4] Meyers raises the following claims: (1) the corpus delicti was not established before Meyers' statements were admitted into evidence; (2) the evidence is insufficient to sustain the conviction; (3) the motion to suppress photographs taken of Meyers was improperly denied. Meyers raises no penalty phase issues.
[5] The identity element of the corpus delicti was not disputed.