704 So.2d 511 (1997)
Anthony Floyd WAINWRIGHT, Appellant,
v.
STATE of Florida, Appellee.
No. 86022.
Supreme Court of Florida.
November 13, 1997.
Rehearing Denied January 16, 1998.
*512 Steven Seliger of Garcia and Seliger, Quincy, for Appellant.
Robert A. Butterworth, Attorney General and Carolyn M. Snurkowski, Assistant Attorney General, Tallahassee, for Appellee.
PER CURIAM.
We have on appeal the judgment and sentence of the trial court imposing the death penalty on Anthony Wainwright. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm.
Anthony Wainwright and Richard Hamilton escaped from prison in North Carolina, stole a Cadillac and guns, and drove to Florida. In Lake City, the two decided to steal another car and on April 27, 1994, accosted Carmen Gayheart, a young mother of two, at gunpoint as she loaded groceries into her Ford Bronco in a Winn-Dixie parking lot. They stole the Bronco and headed north on I-75. They raped, strangled, and executed Gayheart by shooting her twice in the back of the head, and were arrested the next day in Mississippi following a shootout with police.
Upon arrest, Wainwright revealed to officers that he had AIDS and in subsequent statements admitted to raping Mrs. Gayheart despite his illness after kidnapping and robbing her. He claimed, however, that it was Hamilton who strangled and shot her.[1] Wainwright was charged with first-degree murder, robbery, kidnapping, and sexual battery, all with a firearm, and at trial fellow prisoners testified that he admitted he was the shooter. He was convicted as charged, and during the penalty phase his mother testified inter alia that until he was fourteen years old he was a bed wetter. The jury unanimously recommended death and the judge imposed death based on six aggravating circumstances,[2] no statutory mitigating *513 circumstances, and several nonstatutory mitigating circumstances.[3] Wainwright raises nine issues on appeal.[4]
Wainwright first claims that the trial court erred in admitting his post-arrest statements to police. He was arrested in Mississippi and voluntarily returned to Florida. On his return, officers reached an agreement with Wainwright and his lawyer whereby the State would not seek the death penalty if Wainwright met three conditions: (1) He did not contribute to Gayheart's death; (2) he was truthful in his conversations with police; and (3) he passed a lie detector test. Pursuant to this agreement, Wainwright made a number of incriminating statements from May 9 to May 20, 1994, and assisted officers in recovering evidence of the crime. When he was transported to the State Attorney's office on May 20, however, he conferred with his lawyer, admitted for the first time that had sexually assaulted Gayheart, and refused to take the lie detector test. Police had no further contact with Wainwright after that point. The trial court denied Wainwright's motion to suppress these statements, and Wainwright claims this was error. We disagree.
This issue is addressed by Florida Statutes and this Court's rules of procedure, both of which provide that statements made "in connection with" a plea are inadmissible. Section 90.410, Florida Statutes (1993), states:
Evidence of a plea of guilty, later withdrawn; a plea of nolo contendere; or an offer to plead guilty or nolo contendere to the crime charged or any other crime is inadmissible in any civil or criminal proceeding. Evidence of statements made in connection with any of the pleas or offers is inadmissible, except when such statements are offered in a prosecution under chapter 837.
§ 90.410, Fla. Stat. (1993) (emphasis added). Further, Florida Rule of Criminal Procedure 3.172(h) provides:
Except as otherwise provided in this rule, evidence of an offer or a plea of guilty or nolo contendere, later withdrawn, or of statements made in connection therewith, is not admissible in any civil or criminal proceeding against the person who made the plea or offer.
Fla. R.Crim. P. 3.172(h) (emphasis added). This Court explained the meaning of the phrase "in connection with" in Groover v. State, 458 So.2d 226 (Fla.1984):
This Court has not heretofore considered whether a sworn statement made in fulfillment of a negotiated plea bargainas opposed to a statement made to induce or to enhance negotiationsis a statement made in connection with a plea for the purposes of the rule or of the statute. Florida's limitation on the use of such statements is derived from the analogous federal rule and this Court has looked to judicial gloss of the federal rule in construing the state version. [The federal counterpart to the Florida rule] was adopted to promote plea bargaining by allowing a defendant to negotiate without waiving fifth amendment protection. "The most significant factor in the rule's adoption was the need for free and open discussion between the prosecution and the defense during attempts to reach a compromise." This Court has applied the federal courts' narrow construction of [the federal rule] to [the Florida *514 rule].... When an agreement has been reached, further statements cannot be made in the expectation of negotiating a plea. Nor does the policy of fostering frank discussion between prosecution and defense require extending protection to statements made in fulfillment of an agreed-to bargain.
Id. at 228 (citations omitted)(quoting United States v. Davis, 617 F.2d 677, 683 (D.C.Cir.1979))(alteration in original).
In the present case, after hearing testimony and argument of counsel, the trial court made the following finding: "As to the motions before the Court on the three days in question, the Court finds that [the plea] was in the performance stage, and the statements will be admitted." Our review of the record shows that competent substantial evidence supports this finding. Sheriff Reid testified as follows:
A. Yes, sir. The first stipulation was that he could not have contributed in any manner to her death. That was number one. If he contributed to her death, you know, we didn't even want to talk to him about that. Number two, he had to pass thathe had to prove that to us by passing a polygraph test to show us that he did not significantly contribute to her death in any physical manner.
Q. And was he warned that if he was not truthful that everything he said, and if he did not pass the polygraph that everything he said could and would be used against him?
A. Absolutely, that's affirmative. If he didn't tell us the truth about everything, then everything was off.
....
Q. And what does that get him then if he is completely truthful and he didn't contribute to her death and he passes a polygraph test?
A. Then the State would agree not to seek the death penalty.
Reid's testimony indicates that by the time Wainwright made the incriminating statements, the agreement between the parties was a fait accompli. There was no need for "free and open discussions," i.e., privileged discussions, since the deal already had been sealed. No public policy would be furthered by suppressing such statements. We find no error.[5]
At the time of trial, the State had provided defense counsel with three genetic loci on the sperm sample from the back seat of the Bronco, and defense counsel argued thusly in opening:
I suggest to you that the testimony of the DNA experts in this case will leave you asking more questions than they will answer.... Why, if under the RFLP testing processes there are six or seven probes that are available for examination that would perhaps bring to the jury the type of astronomical odds that are bandied about in the DNA cases, were only three probes, only three probes attempted as to Anthony Wainwright? Why not four, five or six?
You will not hear from any expert from the state that they can state with any degree of assertiveness that Anthony Wainwright is the donor of this sample they claim to be a sperm sample of some white male in the population of the United States.
At the end of the day following opening argument, the State told defense counsel that new test results revealed three additional genetic loci, making a total of six, and the odds now against the donor being anyone but Wainwright were astronomical. When defense counsel later sought to exclude the additional evidence, the court heard argument and ruled as follows:
Because of the amount of argument we had in Hamilton County at the jury selection at the beginning of this trial over there, the Court feels that everyone was on notice that the State was proceeding in the DNA testings. The best solution there is that since we have this sick juror, we'll deny your motion, give you twenty-four hours to prepare for the conclusion of the testing and the results of which you have.
Wainwright contends that the court erred in admitting the additional evidence. We *515 disagree. Wainwright does not allege that the State deliberately withheld the evidence or committed some other discovery violation, but simply that the State was dilatory in conducting the DNA tests. We note, however, that admissibility of this evidence is within the trial court's discretion and the court gave the defense a twenty-four hour continuance to allow its expert to evaluate the additional evidence.[6] Defense counsel made no subsequent objection. We find no abuse of discretion.
Wainwright claims that the State did not establish the corpus delicti for the sexual battery charge and that his confession to that crime was thus inadmissible. We disagree. This Court set out the standard for corpus delicti in Meyers v. State, 704 So.2d 1368 (Fla.1997):
To admit a defendant's confession, the state must prove the corpus delicti either by direct or circumstantial evidence. Bassett [v. State, 449 So.2d 803, 807 (Fla. 1984) ]; State v. Allen, 335 So.2d 823, 825 (Fla.1976). It is enough if the evidence tends to show that the crime was committed; proof beyond a reasonable doubt is not mandatory. Bassett, 449 So.2d at 807; Allen, 335 So.2d at 825. To support a conviction, however, the corpus delicti must be established beyond a reasonable doubt. Id.; Cross v. State, 96 Fla. 768, 119 So. 380, 384 (1928).
704 So.2d at 1369-70.
The record in the present case shows that, when found, the body of the victim was too badly decomposed to reveal physiological signs of sexual assault. Nevertheless, other proof was introduced: Semen was found on the rear seat cover of the Bronco; blood types A and O were found on the seat cover (Gayheart is A, Wainwright is O); Gayheart was found naked except for a pair of shorts; Wainwright's fingerprints were found in the Bronco. We note that aside from Wainwright's confession to police, he also confessed to the inmates who testified against him. We conclude that the State introduced proof of sexual assault independent of Wainwright's confession that "tends to show that the crime was committed." Meyers, 704 So.2d at 1370. We find no error.
In addition to murder, Wainwright was convicted of three non-capital offenses: robbery, kidnapping, and sexual battery, all with a firearm. He was sentenced to consecutive life terms on each count. On the sentencing forms, the trial court checked the blanks requiring Wainwright to serve twenty-five-year mandatory minimum terms on each count, and the blanks indicating that the trial court was retaining jurisdiction over the defendant on each count. Wainwright claims that these entries were error and the State agrees.
Our review of the record shows that the twenty-five-year mandatory minimum terms noted on Wainwright's sentencing forms are applicable only to capital offenses.[7] As noted above, Wainwright's crimes that are in issue in this claim are all non-capital offenses. Further, as both Wainwright and the State point out, a court cannot retain jurisdiction over a life term because such a sentence is indeterminate.[8] Again, Wainwright's sentences that are in issue in this claim are all life sentences. Accordingly, we order that the trial court's marks on these blanks be struck so that Wainwright's sentencing forms for the non-capital offenses reflect the imposition of no mandatory minimum terms under section 775.082(1), Florida Statutes (1993), and no retention of jurisdiction under section *516 947.16(3), Florida Statutes (1983). We find the remainder of Wainwright's claims to be without merit.[9]
Based on the foregoing, we conclude that competent substantial evidence supports the conviction for first-degree murder and sentence of death and that the death sentence is proportionate. We affirm the convictions and sentences as corrected above.
It is so ordered.
KOGAN, C.J., and OVERTON, SHAW, GRIMES, HARDING, WELLS and ANSTEAD, JJ., concur.
NOTES
[1] Cf. Hamilton v. State, 703 So.2d 1038 (Fla. 1997) (addressing codefendant Hamilton's claims).
[2] The court found the following: 1) Wainwright committed the murder while under sentence of imprisonment; 2) Wainwright had been convicted of a prior violent felony; 3) the murder was committed during the course of a robbery, kidnapping, and sexual battery; 4) the murder was committed to effect an escape; 5) the murder was especially heinous, atrocious, or cruel; 6) the murder was committed in a cold, calculated, and premeditated manner.
[3] The court found the following: "The Court finds that defendant's difficulties in school and his social adjustment problems, due in part to his problems associated with bed-wetting do provide some measure of mitigation."
[4] Wainwright claims that the court erred on the following points: (1) in allowing Wainwright's pre-trial statements to be introduced; (2) in allowing the final three DNA loci to be introduced; (3) in allowing the case to be tried jointly with separate juries; (4) in allowing introduction of evidence of other crimes; (5) in removing a juror on the tenth day of trial; (6) in allowing introduction of testimony that Gayheart routinely picked her kids up from preschool; (7) in overlooking the State's failure to establish the corpus delicti of sexual assault; (8) in allowing introduction of Wainwright's statement to police that he had AIDS; and (9) in imposing the mandatory minimum portions of the noncapital sentences, and in retaining jurisdiction over the life sentences.
[5] See also Stevens v. State, 419 So.2d 1058 (Fla. 1982).
[6] Cf. Fla. R.Crim. P. 3.220(n)(1):

If, at any time during the course of the proceedings, it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule or with an order issued pursuant to an applicable discovery rule, the court may order the party to comply with the discovery or inspection of materials not previously disclosed or produced, grant a continuance, grant a mistrial, prohibit the party from calling a witness not disclosed or introducing in evidence the material not disclosed, or enter such other order as it deems just under the circumstances.
[7] See § 775.082(1), Fla. Stat. (1993).
[8] See generally § 947.16(4), Fla. Stat. (1993). See also Willis v. State, 447 So.2d 283, 283 (Fla. 2d DCA 1983) ("We hold that the trial court erred in retaining jurisdiction over the life sentence because a life span is immeasurable.").
[9] Issues 3-6 and 8 are without merit.