# Supreme Court of Florida

_____

No. SC2025-0708

_____

**ANTHONY FLOYD WAINWRIGHT,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

June 3, 2025

PER CURIAM.

Anthony Floyd Wainwright is a prisoner under sentence of death for whom a warrant has been signed and an execution set for June 10, 2025.  He appeals the circuit court's order summarily denying his amended eighth successive motion for postconviction relief filed under Florida Rule of Criminal Procedure 3.851.[1]  For the reasons that follow, we affirm.  We likewise deny his motion to stay execution.

---

1.  We have jurisdiction.  _See_ art. V, § 3(b)(1), Fla. Const.

# I

Wainwright was convicted and sentenced to death for the 1994 murder of C.G. *Wainwright v. State* (*Wainwright I*), 704 So. 2d 511, 512 (Fla. 1997). After Wainwright and co-perpetrator Richard Hamilton escaped from prison in North Carolina, they stole guns and a car and drove to Florida. Once in Florida, Wainwright and Hamilton accosted C.G., a young mother of two, at gunpoint as she loaded groceries into her car in a Winn-Dixie parking lot. They stole the car and took off with C.G. "They raped, strangled, and executed [C.G.] by shooting her twice in the back of the head, and were arrested the next day in Mississippi following a shootout with police." *Id.*

Wainwright was found guilty of first-degree murder, robbery, kidnapping, and sexual battery, all with a firearm. The jury unanimously recommended death. The trial court sentenced Wainwright to death after finding six aggravating circumstances,[2]

---

2. The aggravating circumstances were: (1) Wainwright committed the murder while under sentence of imprisonment; (2) Wainwright had been convicted of a prior violent felony; (3) the murder was committed during the course of a robbery, kidnapping, and sexual battery; (4) the murder was committed to effect an escape; (5) the murder was especially heinous, atrocious, or cruel;

no statutory mitigating circumstances, and some nonstatutory

mitigation.[3]  *Id.* at 512-13.  Wainwright raised nine claims on direct

appeal.[4]  This Court affirmed the convictions and sentences as

corrected.[5]  *Id.* at 516.  Wainwright's convictions and sentences

_____

and (6) the murder was committed in a cold, calculated, and premeditated manner.  *Wainwright I*, 704 So. 2d at 512 n.2.

3.  For nonstatutory mitigating circumstances, the trial court found: "The Court finds that defendant's difficulties in school and his social adjustment problems, due in part to his problems associated with bed-wetting do provide some measure of mitigation."  *Wainwright I*, 704 So. 2d at 513 n.3.  However, the trial court accorded the mitigating circumstances little weight and found the mitigating circumstances were outweighed by any single aggravating circumstance.

4.  Wainwright's claims on direct appeal were: (1) the trial court erred by allowing Wainwright's pretrial statements to be introduced; (2) the trial court erred by allowing the final three DNA loci to be introduced; (3) the trial court erred by allowing the case to be tried jointly with separate juries; (4) the trial court erred by allowing introduction of evidence of other crimes; (5) the trial court erred by removing a juror on the tenth day of trial; (6) the trial court erred by allowing introduction of testimony that C.G. routinely picked her children up from preschool; (7) the trial court erred by overlooking the State's failure to establish the corpus delicti of sexual assault; (8) the trial court erred by allowing introduction of Wainwright's statement to police that he had AIDS; and (9) the trial court erred by imposing the mandatory minimum portions of the noncapital sentences and retaining jurisdiction over the life sentences.  *Wainwright I*, 704 So. 2d at 513 n.4.

5.  The Court ordered that "Wainwright's sentencing forms for the non[]capital offenses reflect the imposition of no mandatory minimum terms under section 775.082(1), Florida Statutes (1993),

became final when the United States Supreme Court denied

certiorari on May 18, 1998. *Wainwright v. Florida*, 523 U.S. 1127

(1998).

Wainwright has since unsuccessfully challenged his

convictions and death sentence in both state and federal court.

Wainwright filed an initial motion for postconviction relief raising

fourteen claims.[6] *Wainwright v. State* (*Wainwright II*), 896 So. 2d

---

and no retention of jurisdiction under section 947.16(3), Florida
Statutes (1983)." *Wainwright I*, 704 So. 2d at 515-16.

6. Wainwright's claims in the initial postconviction motion
were: (1) trial counsel was ineffective regarding the admission of
additional DNA evidence; (2) trial counsel was ineffective regarding
Wainwright's statements and admissions; (3) trial counsel was
ineffective regarding evidence of Wainwright's out-of-state crimes;
(4) trial counsel was ineffective regarding a microphone discovered
in Wainwright's cell; (5) trial counsel was ineffective for failing to
object to the penalty phase instructions on the aggravators; (6) trial
counsel was ineffective for failing to object to the prosecutor's
argument at the guilt and penalty phases; (7) trial counsel was
ineffective for failing to maintain a proper attorney-client
relationship, failing to ensure that Wainwright received adequate
mental health evaluations, and failing to investigate and present
additional mitigating evidence; (8) trial counsel was ineffective for
allowing the victim's family to testify at sentencing; (9) trial counsel
was ineffective for failing to object to an alleged *Caldwell v.
Mississippi*, 472 U.S. 320 (1985), error; (10) initial counsel was
ineffective in his pretrial representation of Wainwright; (11) trial
counsel was ineffective for failing to be prepared for trial; (12) trial
counsel was ineffective for introducing statements of the co-
defendant; (13) trial counsel was ineffective for committing an

695, 697 (Fla. 2004). After the circuit court denied the motion, Wainwright raised eight issues on appeal to this Court. Wainwright also filed a habeas petition raising four claims.[7] This Court affirmed the denial of the postconviction motion and denied the habeas petition. *Id.* at 704. The United States Supreme Court denied Wainwright's certiorari petition. *Wainwright v. Florida*, 546 U.S. 878 (2005).

Wainwright also sought federal habeas relief pursuant to 28 U.S.C. § 2254. *Wainwright v. McDonough*, No. 3:05-cv-276-J-25, 2006 WL 8449862, at *1 (M.D. Fla. Mar. 10, 2006). The Middle District of Florida dismissed the petition as untimely. *Id.* at *4. The Eleventh Circuit Court of Appeals affirmed the district court's

---

alleged discovery violation; and (14) trial counsel's illness during trial rendered him ineffective. *Wainwright II*, 896 So. 2d at 697 n.1.

7. Wainwright's claims in the habeas petition were: (1) Florida's capital sentencing scheme is unconstitutional under *Ring v. Arizona*, 536 U.S. 584 (2002), and *Apprendi v. New Jersey*, 530 U.S. 466 (2000); (2) trial counsel failed to raise an issue involving the felony murder jury instruction; (3) the trial court erred by failing to make specific findings before requiring Wainwright to wear a stun belt at trial; and (4) the trial court erred by failing to conduct a *Koon v. Dugger*, 619 So. 2d 246 (Fla. 1993), inquiry. *Wainwright II*, 896 So. 2d at 703 & n.7.

dismissal.  *Wainwright v. Sec'y, Dep't of Corr.*, 537 F.3d 1282, 1287 (11th Cir. 2007).

Wainwright then filed a first and second successive motion for postconviction relief raising newly discovered evidence claims.  This Court affirmed the denial of both postconviction motions. *Wainwright v. State*, 2 So. 3d 948 (Fla. 2008); *Wainwright v. State*, 43 So. 3d 45 (Fla. 2010).  Wainwright filed five more successive postconviction motions.  This Court dismissed or denied each appeal, or Wainwright did not appeal the circuit court's denial to this Court.  *Wainwright v. State*, 63 So. 3d 751 (Fla. 2011); *Wainwright v. State*, 77 So. 3d 648 (Fla. 2011); *Wainwright v. State*, No. SC2015-2280, 2017 WL 394509 (Fla. Jan. 30, 2017); *Wainwright v. State*, No. SC2022-1187, 2022 WL 4282149 (Fla. Sept. 16, 2022).

In 2019, Wainwright filed a Rule 60(b) motion in his federal habeas case in the Middle District of Florida.  *Wainwright v. Sec'y, Fla. Dep't of Corr.*, No. 20-13639, 2023 WL 4582786, at *1 (11th Cir. July 18, 2023).  The district court denied the motion, and the Eleventh Circuit affirmed the denial.  *Id.* at *7.  The United States

Supreme Court denied certiorari. *Wainwright v. Dixon,* 144 S. Ct. 1363 (2024).

On May 9, 2025, Governor DeSantis signed a death warrant for the execution of Wainwright. The execution is scheduled for Tuesday, June 10, 2025, at 6:00 p.m.

Timely under this Court's scheduling order and the circuit court's extended deadline for seeking postconviction relief, Wainwright filed an amended eighth successive motion for postconviction relief. The motion raised three claims: (1) finding the prior violent felony aggravator violated the Sixth Amendment right to trial by jury in light of *Erlinger;*[8] (2) newly discovered evidence of the effects of Wainwright's father's exposure to toxins during the Vietnam War; and (3) newly discovered evidence of a *Brady*[9] violation based on the State's alleged failure to disclose a benefit for one jailhouse informant and the expectation of a benefit for another jailhouse informant.

---

8. *Erlinger v. United States,* 602 U.S. 821 (2024).

9. *Brady v. Maryland,* 373 U.S. 83 (1963).

The circuit court held a *Huff*[10] hearing, after which it determined that an evidentiary hearing was not necessary. The circuit court summarily denied the amended eighth successive motion for postconviction relief on May 20, 2025. Wainwright timely appealed the circuit court's order. He also filed a motion for stay of execution.

**II**

"Summary denial of a successive postconviction motion is appropriate '[i]f the motion, files, and records in the case conclusively show that the movant is entitled to no relief.' " *Bogle v. State*, 322 So. 3d 44, 46 (Fla. 2021) (alteration in original) (quoting Fla. R. Crim. P. 3.851(f)(5)(B)); *see also* Fla. R. Crim. P. 3.851(h)(6). In reviewing a circuit court's summary denial, "this Court must accept the defendant's allegations as true to the extent that they are not conclusively refuted by the record." *Tompkins v. State*, 994 So. 2d 1072, 1081 (Fla. 2008) (citing *Rolling v. State*, 944 So. 2d 176, 179 (Fla. 2006)). Still, "[t]he defendant bears the burden to establish a prima facie case based on a legally valid claim; mere

10. *Huff v. State*, 622 So. 2d 982 (Fla. 1993).

- 8 -

conclusory allegations are insufficient." *Franqui v. State*, 59 So. 3d 82, 96 (Fla. 2011) (citing *Freeman v. State*, 761 So. 2d 1055, 1061 (Fla. 2000)). A circuit court's decision whether to grant an evidentiary hearing on a rule 3.851 motion "is tantamount to a pure question of law, subject to de novo review." *Marek v. State*, 8 So. 3d 1123, 1127 (Fla. 2009) (citing *State v. Coney*, 845 So. 2d 120, 137 (Fla. 2003)).

Also relevant here, postconviction claims in capital cases must generally be filed within one year after the judgment and sentence become final. Fla. R. Crim. P. 3.851(d)(1). With certain exceptions, rule 3.851 prohibits both untimely and repetitive claims. Fla. R. Crim. P. 3.851(e)(2); *see also Hendrix v. State*, 136 So. 3d 1122, 1125 (Fla. 2014) ("Claims raised and rejected in prior postconviction proceedings are procedurally barred from being relitigated in a successive motion." (citing *Van Poyck v. State*, 116 So. 3d 347, 362 (Fla. 2013))).

**A**

In his first argument on appeal, Wainwright argues that his death sentence is unconstitutional under the Sixth Amendment in light of *Erlinger v. United States*, 602 U.S. 821 (2024), because a

judge instead of a jury made the findings necessary to impose death. This is so, says Wainwright, because the prior violent felony aggravator applied in his case required a finding of fact (1) of a prior conviction and (2) that the prior crime involved the use or threat of violence to the person.[11] Wainwright argues that only a jury is constitutionally permitted to determine whether the crime was one that involved the use or threat of violence to the person. He says that because a judge made that finding in his case, every aggravating circumstance applied in his case requires at least one factual finding that should have been made by a jury.

We agree with the circuit court that Wainwright's claim is procedurally barred. Wainwright has raised this exact claim before.

---

11. In contrast to the categorical approach utilized by federal courts, Florida takes a fact-specific approach to determining whether a previous conviction was for a violent felony. *See, e.g.,* *Spann v. State*, 857 So. 2d 845, 855 (Fla. 2003) ("Whether a crime constitutes a prior violent felony is determined by the surrounding facts and circumstances of the prior crime." (citing *Gore v. State*, 706 So. 2d 1328, 1333 (Fla. 1997))); *Anderson v. State*, 841 So. 2d 390, 407 (Fla. 2003) (holding that trial court did not err in admitting testimony that demonstrated the defendant's conviction for attempted sexual battery was actually a completed sexual battery), *abrogation on other grounds recognized by Cruz v. State*, 372 So. 3d 1237 (Fla. 2023).

Wainwright's habeas petition challenged Florida's capital sentencing scheme as unconstitutional under *Ring v. Arizona*, 536 U.S. 584 (2002), and *Apprendi v. New Jersey*, 530 U.S. 466 (2000). *Wainwright II*, 896 So. 2d at 703-04. And in his sixth successive motion for postconviction relief, Wainwright argued:

> In this case, the court made the findings regarding the fact of the prior conviction, as well as the additional findings that the Defendant was serving a sentence of imprisonment and that the prior felony was violent. Thus, proof of more than the fact of a prior conviction was required. . . . As a result, [the] sentence was imposed in violation of the Sixth Amendment right to trial by jury.

We rejected the claim based on *Asay v. State*, 210 So. 3d 1, 22 (Fla. 2016), a case in which we applied our state-specific retroactivity test and concluded that *Hurst v. Florida*, 577 U.S. 92 (2016), does not apply retroactively to sentences that became final before the issuance of *Ring*. So, because Wainwright's current claim has been raised and rejected, it is procedurally barred.[12] *See, e.g., Jackson v.*

---

12. While we do not agree with the State that *Erlinger* categorically never applies in the capital postconviction context, we agree that Wainwright's specific claim has been raised and rejected. Wainwright's argument is that a jury instead of a judge was required to determine whether his prior felony conviction was, in fact, violent. It was rejected because his sentence was final prior to *Ring*, which encompasses any refinement of *Apprendi* protections

- 11 -

*State*, 335 So. 3d 88, 89 n.2 (Fla. 2022) (concluding that a claim was procedurally barred because a "prior successive postconviction motion . . . raised essentially the same arguments" (citing *Hendrix*, 136 So. 3d at 1125)).

This does not end our analysis though because Wainwright argues an exception to the procedural bar: that *Erlinger* constitutes a new rule of law that should apply retroactively to his case. *See* Fla. R. Crim. P. 3.851(d)(2)(B), (e)(2) (exempting from the one-year time limitation motions alleging that "the fundamental constitutional right asserted was not established within the period provided for in subdivision (d)(1) and has been held to apply retroactively").

We reject Wainwright's argument because even if *Erlinger* constitutes a change of law, it does not apply retroactively.[13] A

---

provided by *Erlinger*. As such, it is not a new claim simply because Wainwright now relies on *Erlinger* instead of *Hurst*.

13. Although we conduct a state-law analysis, we conclude that *Erlinger* also does not apply retroactively based on federal law. In his dissenting opinion, Justice Kavanaugh observed that "[f]or any case that is already final, the *Teague* rule will presumably bar the defendant from raising today's new rule in collateral proceedings." 602 U.S. at 859 n.3 (Kavanaugh, J., dissenting) (citing *Edwards v. Vannoy*, 593 U.S. 255, 258 (2021); *Teague v.*

change in the law only applies retroactively to final cases if the change (1) emanates from the Florida Supreme Court or the United States Supreme Court, (2) is constitutional in nature, and (3) constitutes a development of fundamental significance. *Dettle v. State*, 395 So. 3d 1054, 1057-58 (Fla. 2024) (quoting *Witt v. State*, 387 So. 2d 922, 931 (Fla. 1980)). A change of law is of fundamental significance when it (1) places beyond the authority of the state the power to regulate certain conduct or impose certain penalties or (2) is of sufficient magnitude to necessitate retroactive application under the three-factor test in *Linkletter v. Walker*, 381 U.S. 618 (1965).[14] *Dettle*, 395 So. 3d at 1058 (quoting *Witt*, 387 So. 2d at 929). "We have said this retroactivity analysis is supposed to balance the justice system's dual goals of fairness and finality." *Id.* (citing *Witt*, 387 So. 2d at 926). "And, we have said, we use it to

---

*Lane*, 489 U.S. 288, 310 (1989)). We agree. *See also Stackhouse v. United States*, No. 8:15-cr-177-VMC-TGW, 2024 WL 5047342, at *8 (M.D. Fla. Dec. 9, 2024) (deciding *Erlinger*'s procedural rule does not apply retroactively).

14. Those factors are (1) the purpose to be served by the new rule, (2) the extent of reliance on the old rule, and (3) the effect retroactive application would have on the administration of justice. *Dettle*, 395 So. 3d at 1058 (quoting *Witt*, 387 So. 2d at 926).

determine whether a new rule amounts to a 'jurisprudential upheaval[]' (to which we give retroactive effect), or whether it is more like an 'evolutionary refinement[] in the criminal law' (to which we do not)." *Id.* (alterations in original) (quoting *Witt*, 387 So. 2d at 929).

*Erlinger* is not a development of fundamental significance under our existing retroactivity test. First, we reject Wainwright's argument that *Erlinger* places beyond the authority of the state the power to impose the death penalty or other enhanced sentence on a defendant who has not been found eligible for such penalty by a jury of his peers. We have said cases that fall within that class categorically limit the state's ability to impose a sentence of death. *See, e.g.*, *Phillips v. State*, 299 So. 3d 1013, 1019 (Fla. 2020) (citing *Coker v. Georgia*, 433 U.S. 584 (1977), as an example of a case that placed beyond the authority of the state the power to impose the death penalty, which held that the Eighth Amendment categorically prohibits imposing the death penalty for the crime of rape of an adult woman as cruel and unusual punishment). *Erlinger* does not place beyond the authority of the state the power to impose a

certain penalty because it, at most, merely altered the manner of determining a defendant's culpability.

Second, *Erlinger* does not satisfy the *Linkletter* test. Indeed, in *State v. Johnson*, 122 So. 3d 856 (Fla. 2013), we concluded application of the *Linkletter* test to a materially identical precedent failed to justify retroactive application. *Id.* at 861-66. At issue there was whether an *Apprendi* progeny case, *Blakely v. Washington*, 542 U.S. 296 (2004), applied retroactively. *Johnson*, 122 So. 3d at 861. Applying *Apprendi*, *Blakely* held that a fact that increases the sentencing range had to be found by the jury. *Blakely*, 542 U.S. at 303-04. We concluded that decision, like *Apprendi* itself, was a new rule that was nonretroactive under the three-part *Linkletter* test. *Johnson*, 122 So. 3d at 861-66 (explaining why the purpose of the new rule in *Blakely* did not support retroactivity, that Florida had significantly relied on the old rule, and why applying *Blakely* retroactively would have an adverse impact on the administration of justice). We reached the same result in *Hughes v. State*, 901 So. 2d 837, 846 (Fla. 2005) (rejecting argument that *Apprendi* applied retroactively based on analysis of the *Stovall v. Denno*, 388 U.S. 293 (1967)/*Linkletter* factors).

Guided by our analysis in *Johnson* and *Hughes*, we conclude *Linkletter*'s first factor weighs against retroactive application of *Erlinger*. Retroactive application is generally favored when it furthers the new rule's purpose. *See Williams v. State*, 421 So. 2d 512, 515 (Fla. 1982). But we have declined to give retroactive effect to new procedural rules unless their absence would "cast serious doubt on the veracity or integrity of the original trial proceeding." *Witt*, 387 So. 2d at 929; *see, e.g.*, *Williams*, 421 So. 2d at 515 (refusing to apply a rule in part because it "would not enhance the reliability of the fact-finding process [and] . . . has no bearing on guilt and did not involve an attack on the fairness of the trial"); *Chandler v. Crosby*, 916 So. 2d 728, 730 (Fla. 2005) ("This rationale for the new rule weighs against its retroactive application because the rule's purpose is not to improve the accuracy of trials or even to improve the reliability of evidence.").

The purpose of any new rule announced by *Erlinger* does not demand retroactive application. Like *Blakely*, the purpose of *Erlinger* is to conform criminal procedure to the Sixth Amendment's guarantee. It properly allocates decision-making rather than increasing the fairness or accuracy of convictions. *See Schriro v.*

*Summerlin*, 542 U.S. 348, 353 (2004) (concluding that judicial factfinding did not so seriously diminish accuracy such that there was an impermissibly large risk of punishing conduct the law did not reach).  For that reason, it does not fall into the type of significant procedural changes this Court has determined justify retroactive application.

As to the second and third prongs of the *Linkletter* test, our analysis in *Hughes* and *Johnson* applies equally here.  *Johnson*, 122 So. 3d at 865 (citing *Hughes* and concluding second prong of *Linkletter* test weighed against retroactivity because Florida had relied on trial courts in sentencing for a significant period); *Hughes*, 901 So. 2d at 845 (repeating district court's observation that retroactive application of *Apprendi* would have a far-reaching adverse impact on the administration of justice and concluding third prong of *Linkletter* test did not warrant retroactive application).  We again conclude that consideration of *Linkletter*'s second and third prongs counsels against retroactive application of *Erlinger*.

In sum, Wainwright's claim is procedurally barred because the substance of his claim, whether a judge rather than a jury must

find that his prior felony conviction was violent, has been raised and rejected. And even if *Erlinger* announced a new rule that might serve as a vehicle for Wainwright to overcome this procedural bar, *Erlinger* does not apply retroactively. As a result, we affirm the circuit court's order denying Wainwright's claim.

**B**

In his second argument on appeal, Wainwright asserts that the circuit court erred in denying his claim based on allegedly newly discovered evidence of the effect his father's exposure to toxins during the Vietnam War had on Wainwright. Wainwright argues that evidence has accumulated showing that he has long suffered from neurobehavioral deficits, but a causative explanation for these deficits was missing.

Because Wainwright is seeking to vacate his death sentence based on allegations of newly discovered evidence, he must establish "(1) that the newly discovered evidence was unknown by the trial court, by the party, or by counsel at the time of trial and it could not have been discovered through due diligence, and (2) that the evidence is of such a nature that it would probably . . . yield a less severe sentence on retrial." *Dillbeck v. State*, 357 So. 3d 94,

100 (Fla. 2023) (omission in original) (quoting *Dailey v. State*, 329 So. 3d 1280, 1285 (Fla. 2021)). Additionally, for a claim relying on newly discovered evidence to be considered timely, the successive rule 3.851 motion must be filed within one year of the date on which the claim became discoverable through due diligence. *Dillbeck v. State*, 304 So. 3d 286, 288 (Fla. 2020) (quoting *Jimenez v. State*, 997 So. 2d 1056, 1064 (Fla. 2008)); *see also* Fla. R. Crim. P. 3.851(e)(2) (allowing the trial court to dismiss a successive postconviction motion "if the trial court finds the claim fails to meet the time limitation exceptions set forth in subdivision (d)(2)(A), (d)(2)(B), or (d)(2)(C)"). We have explained that "the circuit court is authorized to summarily deny a newly-discovered-evidence claim if the motion, files, and record refute the allegations pertaining to either (or both) prongs of the *Jones* [*v. State*, 709 So. 2d 512 (Fla. 1998)] test." *Rogers v. State*, 327 So. 3d 784, 787 (Fla. 2021).

Here we agree with the circuit court that the information that Wainwright relies on is not newly discovered evidence. Wainwright's newly discovered evidence claim is based on two expert reports prepared specifically for this case. But those reports are based on preexisting studies dating years back. For example,

the report cites studies from 1996 and 2001 and relies in large part on a study from 2023. And while the report points to shortcomings in the investigation of the effects of toxins on the children of Vietnam veterans, it does not suggest the information was unavailable. Under our precedent this report is insufficient to support a newly discovered evidence claim. *Sliney v. State*, 362 So. 3d 186, 189 (Fla.) (concluding a claim of newly discovered evidence based on the publication of a new manual in 2021 was untimely, explaining that, while a new manual might provide more support for the claim, the underlying scientific facts were available before 2021), *cert. denied*, 144 S. Ct. 501 (2023); *Barwick v. State*, 361 So. 3d 785, 793 (Fla. 2023) (recent report based on compilation of studies relying on previously available data did not constitute newly discovered evidence).

Similarly, we reject Wainwright's argument that he had no reason to pursue a claim regarding the effect of Agent Orange exposure until he became aware that his father may have been exposed to it in the first place. *See Rogers*, 327 So. 3d at 788 (denying a newly discovered evidence claim where the defendant

- 20 -

"alleged that three of his brothers had knowledge" of the allegedly new evidence).

We also agree with the circuit court that the alleged evidence would not be material. First, while Wainwright says he was unaware of the cause of his cognitive and neurobehavioral impairments, his intellectual, behavioral, and psychological issues have been an issue throughout the postconviction proceedings.[15] Thus, it is unlikely that one additional cause to explain this set of behaviors would result in a life sentence. *See, e.g.*, *Hutchinson v. State*, No. SC2025-0497, 2025 WL 1155717, at *3 (Fla. Apr. 21, 2025) (concluding that additional mitigation concerning brain injury and cognitive issues would only have a marginal effect at a new penalty phase where trial court had heard evidence of cognitive and mental health issues), *cert. denied*, No. 24-7079, 2025 WL 1261215 (U.S. May 1, 2025).

---

15. *See, e.g.*, *Wainwright II*, 896 So. 2d at 697 n.1 (initial postconviction motion alleged that trial counsel was ineffective for failing to ensure that Wainwright received adequate mental health evaluations); *Wainwright v. State*, 43 So. 3d at 45 (second successive postconviction motion alleged that newly discovered evidence showed that Wainwright's mental age at the time of the murder was below eighteen years).

Likewise, Wainwright's case involved six statutory aggravators. This Court has described the heinous, atrocious, or cruel; cold, calculated, and premeditated; and prior violent felony aggravators as "three of the most serious and weighty aggravators in the capital sentencing scheme." *Craft v. State*, 312 So. 3d 45, 56 (Fla. 2020) (citing *Bush v. State*, 295 So. 3d 179, 215 (Fla. 2020)). Given the heavy aggravation and limited mitigation, the alleged new evidence would not probably result in a life sentence, especially here where the trial court indicated the mitigating circumstances were outweighed by any single aggravating circumstance. *See Dillbeck*, 357 So. 3d at 102 (concluding that the defendant could not demonstrate the probability of a lesser sentence in light of weighty aggravation). We therefore affirm the circuit court's denial of Wainwright's second claim.[16]

16. To the extent Wainwright argues this additional information makes his sentence unconstitutional under the Eighth Amendment to the United States Constitution, we reject the claim. The argument is inadequately briefed and without merit. *See, e.g.*, *Hutchinson v. State*, 50 Fla. L. Weekly S71, 2025 WL 1198037 (Fla. Apr. 25, 2025), *cert. denied*, No. 24-7087, 2025 WL 1261217 (U.S. May 1, 2025).

## C

Lastly, Wainwright argues that the postconviction court erred by denying a claim of newly discovered evidence of a violation of *Brady v. Maryland,* 373 U.S. 83 (1963), for not disclosing that a State's witness, Robert Allen Murphy, expected a benefit from his testimony. Wainwright has not established that the postconviction court erred in denying this claim.

Wainwright's *Brady* claim is based on a May 13, 2025, affidavit by Robert Murphy, who was housed with Wainwright at Taylor County Jail and later testified at Wainwright's trial. The affidavit alleges that Murphy spoke with another inmate who told Murphy that he was receiving a benefit from the State for testifying against Wainwright. This led Murphy to ask the State if he could also receive a benefit in exchange for his testimony. The affidavit recounts that the prosecutor "said that he could not make me a promise but the way he said it made it clear to me that I would get a benefit if I testified." The affidavit also explains how Murphy received a modified sentence following his testimony against Wainwright. Wainwright does not claim that Murphy received a promise from the State, only that Murphy had a "clear

understanding and expectation on his part that he would get a benefit."

We agree with the circuit court that Wainwright failed to exercise reasonable diligence in pursuing this claim. *Freeman*, 761 So. 2d at 1062 ("[T]here is no *Brady* violation where the information is equally accessible to the defense and the prosecution, or where the defense either had the information or could have obtained it through the exercise of reasonable diligence." (quoting *Provenzano v. State*, 616 So. 2d 428, 430 (Fla. 1993))). As the circuit court determined, it was clear from the trial testimony that Murphy had a motion for modification of sentence pending at the time of Wainwright's trial. And it was a matter of public record that Murphy was released on probation shortly after his testimony. Murphy's recent affidavit was not necessary to pursue this claim. So as the circuit court observed, his recent affidavit really adds "nothing" to this claim. All of the information necessary for this claim to be raised was readily available to postconviction counsel decades ago. *See id.* at 1062-63 (finding no *Brady* violation when defense counsel could have discovered the details of a witness

- 24 -

statement through reasonable diligence, such as by deposition or another discovery method).

Even if this claim was reasonably pursued though, the evidence presented by Wainwright is insufficient to establish a claim.[17]  To establish a *Brady* violation, Wainwright must also demonstrate that "(1) the evidence was either exculpatory or impeaching; (2) the evidence was willfully or inadvertently suppressed by the State; and (3) because the evidence was material, the defendant was prejudiced."  *Sheppard v. State*, 338 So. 3d 803, 827 (Fla. 2022) (quoting *Duckett v. State*, 231 So. 3d 393, 400 (Fla. 2017)).  "To establish materiality or prejudice under *Brady*, the defendant 'must demonstrate . . . a reasonable probability that the jury verdict would have been different had the suppressed information been used at trial.' "  *Id.* (omission in original) (quoting *Smith v. State*, 931 So. 2d 790, 796 (Fla. 2006)).  "Reasonable probability" means "a probability sufficient to undermine confidence

---

17.  We review the postconviction court's legal conclusions on a *Brady* claim de novo.  *Sheppard v. State*, 338 So. 3d 803, 827-28 (Fla. 2022) (citing *Duckett v. State*, 231 So. 3d 393, 400 (Fla. 2017)).

- 25 -

in the outcome." *Guzman v. State*, 868 So. 2d 498, 506 (Fla. 2003) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)).

We agree with the postconviction court that the *Brady* claim fails because the allegations are insufficient to establish that the State suppressed evidence. *See Stein v. State*, 406 So. 3d 171, 175 (Fla. 2024) (holding allegation that a witness expected a deal with the State in exchange for testifying at trial was insufficient to establish *Brady* claim where defendant did not allege specific facts showing that the State knew about or suppressed information relating to the witness's expectations), *reh'g denied*, 2025 WL 855671 (Fla. Mar. 19, 2025); *Sheppard*, 338 So. 3d at 828 (defendant did not demonstrate the State willfully or inadvertently suppressed favorable evidence as necessary to prevail under *Brady* where evidence did not establish that the witness entered into a specific deal with the State in exchange for his testimony); *Davis v. State*, 928 So. 2d 1089, 1115-16 (Fla. 2005) (evidence was insufficient to establish *Brady* violation where the witness had the hope that the State would assist him in his effort to secure his gain time, but there was no evidence that a deal was in fact made or a promise conclusively extended).

We also agree with the postconviction court that the alleged evidence would not be material. In addition to Murphy's testimony, there was other significant evidence introduced against Wainwright. *See Wainwright I*, 704 So. 2d at 515; *Wainwright II*, 896 So. 2d at 700. The alleged evidence of Murphy's expectation of a benefit for his testimony would not undermine confidence in the outcome.[18] We affirm the postconviction court's decision to deny this claim.

**III**

For the reasons stated, we affirm the postconviction court's order summarily denying Wainwright's amended eighth successive motion for postconviction relief. As a result, we deny his motion for stay of execution. *See Dillbeck*, 357 So. 3d at 103 ("[A] stay of execution on a successive motion for postconviction relief is warranted only where there are substantial grounds upon which relief might be granted." (quoting *Davis v. State*, 142 So. 3d 867, 873-74 (Fla. 2014))).

---

18. For these reasons the affidavit also does not constitute newly discovered evidence. Wainwright does not show that there is evidence that was not previously available. The alleged new evidence also would not probably lead to a life sentence.

- 27 -

No motion for rehearing will be considered by this Court. The mandate shall issue immediately.

It is so ordered.

MUÑIZ, C.J., and CANADY, LABARGA, COURIEL, GROSSHANS, FRANCIS, and SASSO, JJ., concur.

An Appeal from the Circuit Court in and for Hamilton County,
    Melissa G. Olin, Judge
    Case No. 241994CF000150CFBXMX

Baya Harrison, III, Monticello, Florida; and Terri L. Backhus, Tampa, Florida,

    for Appellant

James Uthmeier, Attorney General, Charmaine M. Millsaps, Senior Assistant Attorney General, Jason W. Rodriguez, Senior Assistant Attorney General, and Janine D. Robinson, Assistant Attorney General, Tallahassee, Florida,

    for Appellee